[No. E031878. Fourth Dist., Div. Two. June 10, 2003.]

GAYLA NEWTON, Plaintiff and Appellant, v.
LAPERLE CLEMONS, Defendant, COUNTY OF SAN BERNARDINO,
Claimant and Respondent.

COUNSEL

Baker, Jacobs & Oring and John M. Inferrera for Plaintiff and Appellant.

Alan K. Marks, County Counsel, and Paul St. John, Deputy County Counsel, for Claimant and Respondent.

OPINION

**WARD, J.**—Plaintiff and appellant Gayla Newton, a medically indigent adult (MIA), received medical treatment for injuries she sustained in a slip-and-fall accident at home. San Bernardino County Medical Center, a hospital operated by real party in interest and respondent, County of San Bernardino (the County), provided the medical care. Plaintiff sued defendant LaPerle Clemons for negligence, on premises liability and other theories. Defendant's insurance carrier ultimately agreed to pay the policy limits of $100,000, but issued the insurance proceeds in two checks, one of which was jointly payable to the County, in satisfaction of the County's asserted lien for reimbursement of medical services. Plaintiff moved to set aside her dismissal of the Clemons action, seeking an order expunging the County's hospital lien, in whole or in part. The trial court denied plaintiff's motion to expunge the County's lien. Plaintiff now appeals. Although we do not agree with plaintiff that the County's recovery should be limited to approximately $1,000 of its $58,000 claim, we do conclude that the court should have expunged a portion of the County's lien claim under Civil Code section 3045.1 et seq.; accordingly, we reverse.

## FACTS AND PROCEDURAL HISTORY

Plaintiff suffered a slip-and-fall injury at her home on February 18, 2000, when she tripped over some loose linoleum tile. Plaintiff had rented the premises from LaPerle Clemons, and sued Clemons for negligence; she included theories of premises liability, breach of the implied warranty of habitability, and similar allegations. Plaintiff eventually reached a settlement with Clemons's insurer. The insurer agreed to pay the policy limits of $100,000, and plaintiff agreed to dismiss the action. Plaintiff filed the request for dismissal on January 10, 2002.

Plaintiff had received treatment for her injuries at the County's hospital. The problem here is the nature of the County's claim, if any valid claim exists, against the proceeds of plaintiff's third-party suit against Clemons. There are three potential sources of the County's right to recoup the costs of medical care it has provided.

First, plaintiff qualified for the MIA program. The state administers health care for public assistance recipients largely through the Medi-Cal program. "Health care for individuals ineligible for Medi-Cal, but unable to afford medical care," however, "[is] the responsibility of the counties pursuant to [Welfare and Institutions Code] section 17000. [Citation.] In 1982, the Legislature excluded from Medi-Cal most individuals who do not fall within the following categories: those at least 65 years of age; blind or disabled persons; and individuals eligible for AFDC. The excluded individuals, referred to as medically indigent persons, meet income and resource eligibility requirements for Medi-Cal, but do not fall within the specified categories. The Legislature transferred state funds to the counties for the purpose of providing health care services to these individuals."[1]

The funds transferred do not fully cover the costs of providing care to medically indigent persons. Thus, persons who qualify for the MIA program are required to sign an agreement to "reimburse the County" for the medical services provided, "from the proceeds of any litigation or settlement" they may receive from a third party, such as a tortfeasor, liable for the injury. Plaintiff executed such an agreement at the time she applied for medically indigent services.

In addition to the contractual agreement for reimbursement under the MIA program, the County's hospital was eligible to assert a lien against any judgment or settlement plaintiff obtained, pursuant to the Hospital Lien Act, under Civil Code section 3045.1 et seq.

Third, Government Code section 23004.1 gives a county a first lien, for the cost of medical care it has provided to an injured person, against any judgment the injured person recovers from a third person who is responsible for the injury.[2]

At the time plaintiff negotiated the settlement with defendant Clemons, the parties discussed the possibility of a "structured settlement" for paying the $100,000 policy limits, to take account of any lien the County may have. In December of 2001, plaintiff agreed with the insurer to issue the policy limits without a structured settlement; Clemons's insurer indicated, however, that the County's medical center was asserting an ostensible lien for $33,778.41. Plaintiff proposed that the insurer should issue two checks: one for the amount that undisputedly belonged to plaintiff, and a second check, payable jointly to plaintiff, her counsel, and the County, for the amount of the alleged lien.

---

[1] *Hunt v. Superior Court* (1999) 21 Cal.4th 984, 994 [90 Cal.Rptr.2d 236, 987 P.2d 705].

[2] *Tapia v. Pohlmann* (1998) 68 Cal.App.4th 1126, 1130-1131 [81 Cal.Rptr.2d 1].

The insurer did send two checks. The first, payable to plaintiff, was for less than half the policy proceeds. The second, apparently for the County's asserted lien, was in the amount of $58,521.70, and made payable jointly to plaintiff, her counsel, and the County. Plaintiff discussed the matter with the County; the County refused to reduce the amount of its lien, even though the amount demanded exceeded 50 percent of the total settlement proceeds.

Plaintiff thereafter moved to set aside its dismissal of the Clemons action, and to expunge the County's purported lien, in whole or in part. Plaintiff asserted a number of theories upon which the lien should be expunged:

First, the County's claim was improper as one under the MIA program. While plaintiff signed a contractual agreement to reimburse the County for MIA expenditures from "the proceeds of any litigation or settlement" she might recover on account of her injury, the County's remedy is to sue to enforce the contractual agreement; there is no provision for asserting a lien.

Second, the claim was improper under Government Code section 23004.1. That provision establishes a "first lien" for the County for the cost of medical care provided, when the injury is caused by a third party. The lien provided in Government Code section 23004.1 also includes the full amount of the medical expenses incurred. This court has held in *Mares v. Baughman*,[3] however, that the third-party lien applies against *judgments*, but does not apply to *settlements*. Accordingly, the third-party lien under Government Code section 23004.1 is inapplicable here.

Third, the claim under the Hospital Lien Act was invalid, at least in part. Unlike the lien provided in Government Code section 23004.1, a hospital lien under the Hospital Lien Act applies to both judgments and settlements. However, as plaintiff pointed out, the California Supreme Court, in *Mercy Hospital & Medical Center v. Farmers Ins. Group of Companies*,[4] had held that a hospital lien asserted under Civil Code section 3045.1 was limited to an amount which could be satisfied from 50 percent of the settlement proceeds. The County's asserted lien here, of over $58,000, exceeded the 50 percent limit, when the settlement proceeds amounted at most to $100,000.

Plaintiff also claimed that the County's lien was limited by another provision of the Hospital Lien Act: that is, the lien applies only for "emergency and ongoing medical or other services." Plaintiff urged that only approximately $1,000 of medical services had been furnished for "emergency

---

[3] *Mares v. Baughman* (2001) 92 Cal.App.4th 672, 676-679 [112 Cal.Rptr.2d 264].
[4] *Mercy Hospital & Medical Center v. Farmers Ins. Group of Companies* (1997) 15 Cal.4th 213, 215-216 [61 Cal.Rptr.2d 638, 932 P.2d 210] (*Mercy Hospital*).

or ongoing" medical treatment. She claimed that there had been an interruption in services while she sought chiropractic treatment for her injuries. Plaintiff acknowledged that the initial treatment she received at the County facility was for emergency medical care. She argued that the remainder of the treatment she received at the County facility was not "ongoing," however, because of the gap in treatment while she sought chiropractic therapy.

The County opposed the motion to set aside the dismissal and to expunge its lien. Its arguments did not make the subtle distinctions among the different theories of recovery; rather, the County simply asserted that plaintiff had signed the reimbursement agreement for the MIA program, the County had an enforceable lien under Civil Code section 3045.1, the 50 percent limitation under Civil Code section 3045.4 did not apply because the County was not suing the insurance carrier, the County retained statutory and common law rights to sue the patient for the full amount of the medical services provided, and the County did not rely on Government Code section 23004.1. The County further asserted that plaintiff was liable to the County for breach of the MIA reimbursement agreement, and that its lien should not be reduced by any amounts attributable to plaintiff's attorney fees (an issue not, so far as we can determine, asserted by plaintiff in her motion).

The trial court took the matter under submission. Ultimately, it denied plaintiff's motion: "Plaintiff[] argues that the § 3045.1 lien is valid only to the extent of 50% of the emergency treatment rendered to plaintiff. However, under § 3045.1, as amended in 1992, the lien includes treatment beyond the emergency care and includes ongoing care. Counsel's suggestion that the section remains applicable only to emergency care and care related to the emergency admission is without authority and is counter to the plain meaning of the statute. Mercy Hospital and Medical Center v. Farmers Insurance Group (1997) 15 Cal.4th 213, dealt with the statute in its pre-1992 form. The court specifically noted: 'In 1992, sections 3045.1, 3045.3, and 3045.4 were amended to in part expand the lien's scope to include "emergency and ongoing medical or other services," … These amendments do not affect the resolution of the issue before us.' Moreover, Govt. Code § 23004.1 is only one of the lien sections asserted by the [C]ounty. Mares, therefore, does not defeat the lien under § 3045.1. [¶] The motion to vacate the dismissal and expunge the lien is denied." (Underscore in original.)

Plaintiff filed a timely notice of appeal from this ruling.

ANALYSIS

I. *Standard of Review*

By and large, we are called upon here to determine the meaning of the relevant statutory provisions, and to apply the legal pronouncements of the

courts explicating those statutes. The underlying facts are undisputed. We are thus concerned with questions of law, which we review de novo.[5]

## II. *A Lien Under Government Code Section 23004.1 Does Not Apply Against Settlements*

Plaintiff argued below that the County's purported lien could not properly be based upon Government Code section 23004.1.

Government Code section 23004.1, subdivision (a), provides in relevant part: "In any case in which the county is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment ... to a person who is injured or suffers a disease, under circumstances creating a tort liability upon some third person to pay damages therefor, the county shall have a right to recover from said third person the reasonable value of the care and treatment so furnished ..., or shall, as to this right, be subrogated to any right or claim that the injured or diseased person ... has against such third person to the extent of the reasonable value of the care and treatment so furnished ...."

Subdivision (b) goes on to provide: "The county may, to enforce such rights, institute and prosecute legal proceedings against the third person who is liable for the injury or disease in the appropriate court, either in its own name or in the name of the injured person .... In the event that the injured person ... brings an action for damages against the third person who is liable for the injury or disease, the county's right of action shall abate during the pendency of such action, and continue as a first lien against any judgment recovered by the injured or diseased person ... against the third person who is liable for the injury or disease, to the extent of the reasonable value of the care and treatment so furnished .... When the third person who is liable is insured, the county shall notify the third person's insurer, when known to the county, in writing of the lien within 30 days following the filing of the action by the injured or diseased person ...."

This court interpreted these provision in *Mares v. Baughman, supra,* 92 Cal.App.4th 672. We there stated that Government Code section 23004.1 provides for an independent action by a county against any third party (such as Clemons) "liable for the injury that necessitated medical care."[6] A county's independent action is abated only during the time that the injured person pursues an action against the third party. "Once the [injured person's] action

---

[5] *Murphy v. Padilla* (1996) 42 Cal.App.4th 707, 711 [49 Cal.Rptr.2d 722].

[6] *Mares v. Baughman, supra,* 92 Cal.App.4th 672, 679.

is no longer pending, should an amount remain due and owing to County for those services, it may pursue its own action."[7]

In the meantime, while the injured person's action is pending, and a county's right of action is abated, that right of action " 'continue[s] as a first lien *against any judgment* recovered by the injured ... person.' " While there are no limits on the amount of the lien—i.e., the extent of the lien includes the full reasonable value of the services furnished—the lien applies only to *judgments*, not to settlements, recovered by the injured person from the third party.[8]

Plaintiff argued below that this court's decision in *Mares v. Baughman*, *supra*, 92 Cal.App.4th 672, made clear that the County could not recover its lien under the rubric of Government Code section 23004.1, inasmuch as plaintiff's recovery was by way of settlement rather than in a judgment. The County apparently conceded the point, stating in its opposition to the expungement motion that it did not rely on Government Code section 23004.1. The trial court agreed. The court noted, however, that the County's lien was asserted under theories in addition to Government Code section 23004.1; thus, the court held, that Government Code section 23004.1 and *Mares* did not necessarily preclude all lien recovery.

We agree. Although the County cannot recover its lien under Government Code section 23004.1, that provision does not defeat a lien asserted under another, proper, theory.

III. *Plaintiff's Agreement to Reimburse the County for Benefits Under the Medically Indigent Adult Program May Give Rise to a Contractual Right, But Does Not Impose a Lien*

Plaintiff did sign an agreement, as a participant in the MIA program, to reimburse the County for the costs of her medical care "from the proceeds of any litigation or settlement resulting from such act" that she might receive. "Such act" refers to any act causing the accident or injury, for which medical care was provided to the MIA applicant, and for which a third party has been found liable, through litigation or settlement. In such cases, the MIA applicant must reimburse the costs of the medical care from the proceeds of the litigation or settlement.

The question is, what is the County's remedy if an MIA applicant fails to honor the reimbursement agreement? Plaintiff asserts that the County's

---

[7] *Mares v. Baughman*, *supra*, 92 Cal.App.4th 672, 679.

[8] *Mares v. Baughman*, *supra*, 92 Cal.App.4th 672, 676, italics in original; italics omitted.

remedy is to sue for breach of the agreement. The County implicitly concedes the point, as it offers no statutory or other authority demonstrating that the MIA agreement imposes a lien on the "proceeds of any litigation or settlement." Indeed, the County's briefing acknowledges that plaintiff's signature on the MIA application constitutes a written contractual obligation, and that failure to comply with the written promise could subject plaintiff to a separate enforcement suit by the County. ■ As the County explicitly notes, plaintiff's potential liability under the MIA agreement is "IN ADDITION TO HER LIEN OBLIGATION," and not identical to the lien obligation. It may very well be true that "[a]ny failure by [plaintiff] to pay the lien *will result in additional actions* by [the County] for breach of contract and common counts," (italics added) but the County is indeed relegated to those additional actions. It cannot simply bypass the necessity of filing a separate enforcement suit. No such action has yet been filed, much less proven and reduced to judgment. The MIA agreement does not, in itself, provide any justification for enforcing the *lien* claim, in the absence of a separate contract action.

IV. *The County's Lien Is Based Exclusively on Civil Code Section 3045.1*

The County's brief makes explicit that it relies exclusively on the Hospital Lien Act, Civil Code section 3045.1 et seq., for its claimed lien. Plaintiff argues that the asserted hospital lien is subject to certain limitations; the County disputes the applicability of those limitations.

Taking up the simpler point first, we address plaintiff's contention that the hospital lien is limited to "emergency and ongoing" medical care, but that only $1,005.16 of the charges sought come within that description. That is, plaintiff agrees that her initial treatment qualified as "emergency" care, and amounted to $1,005.16 in medical expenses. The remainder of plaintiff's medical expenses for the injury were not initial "emergency" medical expenses; neither can they be considered "ongoing" medical expenses, she argues, because there was a gap in treatment at the County's hospital, while plaintiff received chiropractic therapy for her injuries. Only after the course of chiropractic treatment failed to resolve her condition did plaintiff return to the County's facilities.

In addition, plaintiff asserts that many of the expenses included in the claimed lien are not proper because they are attributable to independent health care providers. These other health care providers had billed the County for services rendered, but the services were not directly provided *by the County's hospital.*

The County's briefing as to these contentions is singularly unhelpful. To the contention that the County's claimed lien charges were not proper, to the

extent they were not "emergency" or "ongoing" medical services, the County simply insists, with no coherent argument or citation to authority, that reducing a claimed lien by 98 percent was unjustified. The County baldly states that plaintiff "seeks to cut the County's lien by more than 98 percent," without providing a "scintilla of authority for such a drastic reduction." The County chides plaintiff for arguing, "[i]n effect," that she "should receive free medical care at the expense of the tax payers [*sic*] despite having received a settlement that included damages for medical care." The County urges us simply to "summarily reject[]" plaintiff's arguments. Contrary to the County's cavalier remarks, however, plaintiff's contention is at least arguable, based upon the language of the relevant statute. Plaintiff points out, correctly, that Civil Code section 3045.1 applies only to *hospital liens*, and only for qualifying "emergency or ongoing medical or other services." Her reliance upon the language of the statute itself, in the absence of any extant case law, is proper. Indeed, the canons of construction which courts employ in determining questions of statutory interpretation, require resort first to the language of the statute itself. If that language is clear on its face, no further "construction" or "authority" is required, or even permitted.[9] Plaintiff's argument also looks to the plain language of the statute; she suggests that the County's lien was improper, not only because her treatment did not satisfy the definition of "ongoing" medical care, but also because many of the claimed charges did not properly relate to the allowable subject of the lien, i.e., *hospital* charges.

We shall overlook the latter suggestion, however; even if plaintiff has, contrary to the County's position, articulated a plausible issue, we do not consider it for the more fundamental reason that it was never presented to the trial court as a ground for expunging a portion of the hospital lien. Consequently, the factual questions upon which such an issue depends have never been resolved. "[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court."[10] Thus, "we ignore arguments, authority, and facts not presented and litigated in the trial court. Generally, issues raised for the first time on appeal which were not litigated in the trial court are waived. [Citations.]"[11]

---

[9] See *People v. Knowles* (1950) 35 Cal.2d 175, 183 [217 P.2d 1] ["If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history"]; accord, *Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672]; *California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].

[10] *Asbestos Claims Facility v. Berry & Berry* (1990) 219 Cal.App.3d 9, 26 [267 Cal.Rptr. 896].

[11] *Bialo v. Western Mutual Ins. Co.* (2002) 95 Cal.App.4th 68, 73 [115 Cal.Rptr.2d 3].

Plaintiff argues that the lion's share of the expenses incurred for treatment at the County facility are not properly subject to the Hospital Lien Act. Plaintiff went to the emergency room for treatment on three occasions immediately after her fall. The expenses for these visits totaled $1,005.16; plaintiff concedes that this amount is proper. Plaintiff asserts that she was then treated, however, "by a chiropractor outside of the County medical treatment system," for approximately one month, from March 16, 2000, to April 12, 2000. Plaintiff asserts that all the remaining charges included in the County's claimed lien "are for treatment that *resumed with various County health facilities on a non-emergency basis*," after the chiropractic treatments proved unsuccessful. Although plaintiff admits that she "completed her chiropractic treatment without resolution of her symptoms," she nevertheless insists that the treatment she "resumed" at the County facilities was "not 'ongoing' treatment," but rather a "new and different treatment."

Formerly, Civil Code section 3045.1 provided a hospital lien to "every municipal corporation ... which furnished *emergency medical or other services* of a reasonable value in excess of one hundred dollars ($100) to any person injured by reason of an accident or wrongful act [not covered by workers' compensation]." Civil Code section 3045.1 also formerly provided expressly that, "[f]or the purposes of this section, the emergency period shall not exceed a period of 72 hours."[12]

In 1992, the provision was amended to abolish the 72-hour "emergency" period limit, and the $100 floor on the value of services provided. As amended, and as in force for purposes of this action, Civil Code section 3045.1 allowed a hospital lien for "emergency and ongoing medical or other services" provided to an injured person "by reason of an accident or negligent or other wrongful act," if the act is not covered, e.g., by the workers' compensation law.

So far as our research has revealed, no case has definitively construed the meaning of "ongoing" treatment, which is now included as part of the lien charges. Webster's Ninth New Collegiate Dictionary defines "ongoing" as "1: being actually in process," or "2: continuously moving forward: GROWING."[13] Plaintiff has not proffered a definition which differs materially from these.

■ Whatever else "ongoing" may mean or not mean, we do not consider a brief, unsuccessful, attempt at other treatment modalities sufficient to defeat a claim of "ongoing" treatment. Plaintiff suffered continuously from the

---

[12] *Statutes 1961, chapter 2080, section 1, page 4340.*
[13] Webster's Ninth New Collegiate Dictionary (9th ed. 1991) page 825.

original injury and its consequences. That she may have tried more than one kind of treatment does not mean that the treatment provided by the County was not "ongoing." By whatever means, including treatment at the County's facilities, plaintiff's course of medical care was "actually in process" and "continuously moving forward." Her condition remained unresolved and required, in commonsense terms, "ongoing" treatment. We reject plaintiff's argument, therefore, that the bulk of the claimed lien amounts were not for "ongoing" treatment.

The final point remains, however: the 50 percent limitation of Civil Code section 3045.4. Plaintiff urges that, under *Mercy Hospital*,[14] the County may only recover so much of its charges, as a hospital lien, as may be satisfied from 50 percent of the insurance proceeds. Because the policy limit was $100,000 here, the County may recover, as a lien, only $50,000. The balance of its lien claim of $58,521.70 must be expunged.

The County's response is, again, useless. The County simply asserts that the 50 percent limitation of Civil Code section 3045.4 does not apply. The County unblushingly avers that "there is no such [50 percent] limitation in the statute," but that the "statute [instead] states that the payor (insurance carrier) is liable <u>for the amount of the lien</u> if it did not pay the lienholder at least 50% of the settlement remaining after payment of other lienholders." The County, irrelevantly, insists that "the statute does not limit the responsibility of the patient for the lien. Instead, it establishes a maximum liability to a lienholder *by a payor* who paid the patient, but failed to pay the hospital ...." (Underscore in original; italics added.) The County asserts that "[a]s there is no action pending against the insurance carrier who made the payment (for Defendant LaPerle Clemons), Civil Code § 3045.4 does not apply." Further, the County declares that *Mercy Hospital* "does not apply because it was an action by a lienholder against the insurance carrier after the insurance carrier failed to pay the lien. In the present action, the insurance carrier has not failed to pay and the lienholder [County] has not sued the insurance carrier." The County's facile argument fails to take account of the nature of a hospital lien.

As the California Supreme Court pointed out in *Mercy Hospital, supra*, 15 Cal.4th 213, Civil Code section 3045.1 creates a "statutory nonpossessory lien ... in favor of a hospital against third persons liable for the patient's *injuries*."

"A lien is a charge imposed in some mode other than by a transfer in trust upon specific property by which it is made security for the performance of an

---

[14] *Mercy Hospital & Medical Center v. Farmers Ins. Group of Companies, supra*, 15 Cal.4th 213, 223.

act."[15] A lien may be created by contract, or by operation of law. "There are various types of personal property liens; the one at issue in this case [i.e., a hospital lien] is a statutory nonpossessory lien. Such liens are generally nonconsensual, and enacted 'to compensate a person who, pursuant to express or implied contract, furnishes services or materials in the improvement of a chattel, or stores it.' [Citation.]"[16] The hospital lien act "compensates a hospital for providing medical services to an injured person by giving the hospital a *direct right to a certain percentage of specific property*, i.e., a judgment, compromise, or settlement, otherwise accruing to that person." (Italics added.)[17]

Civil Code section 3045.4 establishes the "certain percentage" of the judgment or settlement amounts to which the lien applies: "Any person, firm, or corporation, including, but not limited to, an insurance carrier, making any payment to the injured person ..., for the injuries he or she sustained, after the receipt of the notice [of the hospital lien], without paying to the [hospital] the amount of its lien claimed in the notice, *or so much thereof as can be satisfied out of 50 percent of the moneys due* under any final judgment, compromise, or settlement agreement after paying any prior liens shall be liable to the ... [hospital] *for the amount of its lien* claimed in the notice *which the hospital was entitled to receive* as payment for the medical care and services rendered to the injured person." (Italics added.)

Civil Code section 3045.5 then provides that a hospital may enforce its lien, "at any time within one year after the date of the payment to the injured person, ... by filing an action at law against the person, firm, or corporation making the payment and to whom ... notice [of the lien] was given ...."

*Mercy Hospital* did involve an enforcement action against the insurer, which this action does not. ██ Nevertheless, even though the County has not here had to resort to an enforcement action under Civil Code section 3045.5, there is no reason why the 50 percent limitation of Civil Code section 3045.4 would not apply. The payment fund at issue consists solely of "moneys due under [a] final judgment, compromise, or settlement agreement."[18] The sole question is how much of that payment to which the County is entitled *as a lien*.

In *Mercy Hospital*, *supra*, 15 Cal.4th 213, the insurer had paid the entire policy limits to the injured person, without paying anything for the hospital's

---

[15] Civil Code section 2872; see also Code of Civil Procedure section 1180.

[16] *Mercy Hospital & Medical Center v. Farmers Ins. Group of Companies*, *supra*, 15 Cal.4th 213, 217.

[17] *Mercy Hospital & Medical Center v. Farmers Ins. Group of Companies*, *supra*, 15 Cal.4th 213, 217.

[18] Civil Code section 3045.4.

lien. The lien arose under the former version of Civil Code section 3045.1, which exempted the first $100 of expenses incurred from the hospital's lien, and which limited the lien to expenses incurred for the first 72 hours of "emergency" treatment. Mercy Hospital had concededly provided some $49,000 in qualifying emergency services. The policy limits of the defendant's insurance were $15,000. The parties agreed that the insurer was obligated to pay one-half of the policy limits less $100: 1/2 x ($15,000 - $100) = 1/2 x $14,900, or $7,450.

The "dispute [was] over what amount [the insurer] is liable for once it disbursed the policy limits without paying [the hospital] $7,450. [The hospital] contends that pursuant to former section 3045.4, [the insurer] is now obligated to pay the entire amount of the hospital's lien, or $49,197.95. [The insurer], on the other hand, contends that this section simply provides that the insurer remains liable to pay [the hospital] $7,450 'notwithstanding ... that it has already paid its policy limits to the injured party.' "[19]

The hospital contended that, once the insurer had paid the policy limits to the plaintiff, without paying anything toward the hospital's lien, "all bets were off," so to speak, and the insurer then became liable for the entire $49,000 lien. The California Supreme Court rejected that argument. The court explained: "At the time former section 3045.4 was enacted, it was a settled principle in California that a debtor, notified that part of its debt had been assigned to another, did not extinguish that debt by paying the original obligee in full. Rather, despite full payment to the original obligee, the debtor remained liable to the assignee for the amount of the assignment. [Citation.]"[20]

Nevertheless, "[n]othing in [the relevant] cases suggests ... that the amount of the debtor's obligation *increases* if it neglects to pay the lien creditor or assignee of the debt. We presume that the Legislature was aware of these principles when it drafted former section 3045.4, and that the language the 'amount of [the hospital's] lien ... which the hospital was entitled to receive as payment' simply incorporates this common law principle with respect to the hospital's newly created statutory lien."[21] Thus, the court adopted an interpretation of Civil Code section 3045.4 in which "the 'amount of [the hospital's] lien ... which the hospital *was entitled to receive as payment*' [italics added] ... refer[s] back ... to the amount the hospital was entitled to

[19] *Mercy Hospital & Medical Center v. Farmers Ins. Group of Companies, supra*, 15 Cal.4th 213, 219, italics omitted.

[20] *Mercy Hospital & Medical Center v. Farmers Ins. Group of Companies, supra*, 15 Cal.4th 213, 220.

[21] *Mercy Hospital & Medical Center v. Farmers Ins. Group of Companies, supra*, 15 Cal.4th 213, 221.

receive *at the time the judgment or settlement was disbursed.* This would be the 'lien ... or so much thereof as [could] be satisfied out of 50 percent of the moneys.' "[22]

Here, the amount the County would be "entitled to receive at the time the judgment or settlement was disbursed,"—the amount plaintiff was seeking to establish—was $50,000, or one-half of the entire policy proceeds, because the amount of the claim is no longer subject to the 72-hour emergency limitation, or the $100 expense "floor."

The California Supreme Court explained the reason for the limitation: "The apparent purpose of former section 3045.4 was to secure part of the patient's recovery from liable third persons to pay his or her hospital bill, while ensuring that the patient retained sufficient funds to address other losses resulting from the tortious injury. As one author noted shortly before section 3045.4's enactment, 'Few would contend that any person who is financially able to pay his medical bill should not do so. Fewer would contend that payment of medical bills should be so burdensome as to pauperize a patient or his family.' (Greenfield, *Property Liens for County Hospital Care—A Collection Tool*, Bur. Pub. Admin., 1961, Legis. Problems: No. 8, Public Medical Care, p. 3.)"[23] This rationale and legislative purpose remain the same, despite amendment of Civil Code section 3045.1, and even though the County has not had to resort to separate litigation, either under Civil Code section 3045.5, or independently against plaintiff for breach of contract.

The County insists that Civil Code section 3045.4 "does not limit the responsibility of the patient for the lien." Yet, we conclude, that is exactly what it does. ■ It does not reduce the patient's *contractual* liability for the full value of the services rendered, but the entire amount is not recoverable as a *lien.* A lien attaches without the necessity of filing an independent action and pursuing it to judgment; rather, it is a mechanism by which sums may be recovered from a specified fund or asset without a separate litigation, or its associated expense. A hospital lien can attach to nothing other than settlement or judgment funds provided by a third party liable for the patient's injuries. In 100 percent of the cases, someone, such as an insurance carrier, will be making a payment to the injured person as a "final judgment, compromise, or settlement." That payment, from the insurer or other person, to the patient, is subject to the payment of prior liens, if any, and then for the hospital lien, "or so much thereof as can be satisfied out of 50 percent of the moneys due under

---

[22] *Mercy Hospital & Medical Center v. Farmers Ins. Group of Companies, supra,* 15 Cal.4th 213, 220, italics added.

[23] *Mercy Hospital & Medical Center v. Farmers Ins. Group of Companies, supra,* 15 Cal.4th 213, 217-218.

[the] final judgment, compromise, or settlement."[24] If the hospital could nevertheless insist that a greater percentage of the settlement or judgment be paid to it for its lien, on the ground that Civil Code section 3045.4 does not limit the *patient's* liability for the lien, then the 50 percent limitation would be rendered nugatory. We must avoid any statutory construction which renders a portion of the statutory language meaningless.[25] Moreover, the statutory purpose, as articulated by the California Supreme Court in *Mercy Hospital*, would also be defeated, to preserve a portion of the monetary recovery to the patient himself or herself, to ameliorate other losses caused by the injury, and to avoid pauperizing the patient altogether.

Far from being inapplicable, as the County contends, we find *Mercy Hospital* instructive, if not dispositive, on the issue. The lien operates only as to funds paid in judgment, settlement, or other compromise, of third-party liability for the injuries for which the hospital incurred charges. There will always, and only, be a payor fund to which the lien could apply. The 50 percent limitation unequivocally applies to this fund.

The hospital lien process provides significant benefits to hospitals. The hospital need only give notice to the payor; it is not required to incur the considerable expense of initiating its own litigation in order to validate the lien. If the payor fund is adequate, the lien might wholly satisfy the hospital expenses generated by the qualifying treatment, again, without significant legal expense. If, for example, the County's qualifying medical expenditures here had not exceeded $50,000, 100 percent of its lien claim could have been satisfied from the third-party fund. Similarly, if the policy limits had been greater than $100,000, then the fund might have been able to satisfy 100 percent of the County's claim.

If the policy limits, or other funding sources, are inadequate to fully satisfy the lien claim, however, then the hospital asserting the lien must consider whether to take any further actions. Given the legislative purpose of balancing the impoverishment of the patient against the reimbursement of hospitals providing necessary medical care, the hospital could determine whether the costs of suing the patient were worth the potential greater recovery. Notwithstanding the patient's contractual liability, if the third-party fund is small, and the patient impecunious, the hospital may well decide that the simpler lien recovery is better than a somewhat greater recovery achieved at considerably higher expense. The decision whether or not to pursue a separate suit, however, to enforce the contract against the patient, is a wholly different

---

[24] Civil Code section 3045.4.

[25] *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323]; see also *Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798–799 [268 Cal.Rptr. 753, 789 P.2d 934].

question from the allocation of the settlement funds under Civil Code section 3045.4. The separate suit does not limit the County's recovery for the amounts it expended for plaintiff's care, but the *lien* on plaintiff's third-party recovery *is* plainly subject to the 50 percent limitation of Civil Code section 3045.4. If the County desires a greater recovery than that provided by its lien, it must undertake an independent action.

We conclude, therefore, that the settlement funds, the $100,000 policy limits of defendant's insurer, were subject to the 50 percent limitation of Civil Code section 3045.4. If the County could properly insist on a check from the fund for the full $58,521.70, Civil Code section 3045.1 would be rendered effectively meaningless.

As the California Supreme Court pointed out in *Mercy Hospital, supra*, 15 Cal.4th 213, the amendments to Civil Code section 3045.1 did not affect the applicability of the 50 percent limitation; rather, the lien is simply no longer subject to other restrictions, such as the 72-hour emergency care limitation, or the $100 "floor," which may not be included in the lien. Plaintiff has not shown that any of the claimed $58,521.70 was not for properly qualifying services. We therefore conclude that "so much [of the lien] as can be satisfied out of 50 percent of the moneys due under [the] ... settlement agreement" amounts to $50,000. The trial court thus erred in denying plaintiff's motion to expunge the lien to the extent of $8,521.70, and in denying the motion to set aside the dismissal, insofar as it was necessary to do so to partially expunge the County's lien. The judgment must accordingly be reversed.

## DISPOSITION

Plaintiff's settlement was subject to the County's lien against the settlement funds. Under *Mercy Hospital, supra*, 15 Cal.4th 213, the County's hospital lien was subject to the 50 percent limitation of Civil Code section 3045.4. The settlement was for $100,000. Fifty percent of the settlement was $50,000. The latter sum was not enough to wholly satisfy the County's lien but "so much" of the County's lien "as can be satisfied out of 50 percent of the moneys due under [the] settlement agreement"[26] amounted to $50,000. The court should have granted plaintiff's motion to expunge $8,521.70 of the County's lien, and granted plaintiff's motion to set aside the dismissal, to the extent and for the purpose of requiring the payor (defendant Clemons's insurer) to issue new checks limiting the County's lien payment to $50,000, and requiring plaintiff to enter a new dismissal upon issuance of the appropriate settlement checks.

In all other respects, the contentions on appeal are without merit. The County's insistence that plaintiff remains contractually and otherwise liable

---

[26] Civil Code section 3045.4.

for the full amount of the expenses is, even if true, irrelevant. The County may, if it so desires, file a separate breach of contract or common counts action, but such independent remedies are not statutory liens.

The judgment is reversed and remanded with directions to grant plaintiff's motion to expunge the County's lien in part, and to conduct other such proceedings as are necessary, consistent with this opinion. Plaintiff shall recover costs on appeal.

Ramirez, P. J., and Gaut, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 1, 2003.