Filed 2/2/16  Certified for publication 3/2/16 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| SARA ASTORGA,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>RETIREMENT BOARD OF THE SANTA BARBARA COUNTY EMPLOYEES RETIREMENT SYSTEM,<br><br>  Defendant and Respondent. | 2d Civil No. B263325<br>(Super. Ct. No. 1468905)<br>(Santa Barbara County) |

Sara Astorga applied for retirement disability.  To maintain health insurance pending the decision on her application, she elected to remain on the payroll and receive her accrued sick leave, vacation and holiday pay in small but regular increments.

The Retirement Board of the Santa Barbara County Employees Retirement System (Board) approved Astorga's disability retirement application.  Government Code section 31724[1] states that a disability retirement may not commence until the day following the last day the applicant received "regular compensation."  The Board determined the effective date of her retirement was the day after she received her last sick leave, vacation or holiday payment.  It rejected her argument that the effective date

---

[1] All statutory references are to the Government Code unless otherwise stated.

should be calculated based on the day her sick leave, vacation and holiday pay balances would have been exhausted had she taken them in full rather than in smaller increments.

Astorga petitioned for a writ of mandate. (Code Civ. Proc., § 1094.5.) The trial court denied the petition, concluding that the Board correctly calculated Astorga's effective date of disability retirement. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

Astorga began working for the County of Santa Barbara (County) on September 11, 1995. She ceased working on November 18, 2011 and applied for disability retirement on December 19, 2011. At that time, she was provided with a copy of the Board's Guidelines for Disability Effective Dates (Guidelines), which define "regular compensation" to mean "compensation of any kind or amount that the employer pays (a) at the member's regular rate of pay, (b) for employment in the member's regular position, and (c) for actually working, or for an absence from work."

Prior to her last day of work, Astorga had taken periods of leave for which she received State Disability Insurance (SDI) payments. During the periods she received SDI, Astorga "executed a document electing to receive a portion of her accrued sick leave, overtime, holiday and vacation loan balances to be 'integrated' with her SDI payments such that the combined benefit would equal 80% of her regular pay." The document advised that "[i]ntegrating leave balances with SDI benefits may impact the effective date of a disability retirement benefit."

On January 20, 2012, Astorga and the County executed a Separation Agreement confirming Astorga's election to remain on the County payroll until the effective date of her disability retirement. The Separation Agreement, which Astorga signed with the advice of counsel, provided that she would continue to receive leave balances in small but regular amounts corresponding to the amount of her health insurance payments.

Astorga received compensation in some amount of vacation, holiday or sick leave pay in each pay period between November 18, 2011, and December 8, 2013. She also received donated sick and vacation leave credits from other employees on three

2

occasions, with the last donation occurring during the pay period ending December 8, 2013.

On November 20, 2013, the Board granted Astorga's application for disability retirement. The Board's staff determined, pursuant to *Katosh v. Sonoma County Employees' Retirement Assn.* (2008) 163 Cal.App.4th 56 (*Katosh*), that the effective date of her disability retirement was December 9, 2013, the day following the last day she received compensation in the form of sick leave, vacation or holiday pay. Astorga disputed this date, arguing that "the effective date of her disability retirement should be February 28, 2012, the date that the compensation she received during the last two years of her employment would have been paid out had it been paid in consecutive 80 hour pay periods."

In lieu of an administrative hearing, the parties stipulated to the facts underlying Astorga's claim of an earlier effective date of disability retirement. Among other things, Astorga conceded that in accordance with the Separation Agreement, her "last day of employment with the County was December 8, 2013 and [that] she received from the County pay for all remaining accrued leave balances through that date." She also did "not dispute that amounts she received from December 2011 through December 8, 2013 were 'regular' compensation pursuant to . . . section 31724 and the Guidelines."

The Board subsequently confirmed that pursuant to its Guidelines, section 31724 and interpretative case law, Astorga's disability retirement date was in fact December 9, 2013. The trial court denied Astorga's petition for writ of mandate, finding *Katosh, supra,* 163 Cal.App.4th 56, "dispositive" on the issue. It noted that the Board "modified its practices to conform [to] the requirements set forth in *Katosh* in 2009 and has been using those practices consistently since 2009." Astorga appeals.

DISCUSSION

Section 31724 states that the payment of disability retirement "shall be effective as of the date [the] application [for retirement] is filed with the board, *but not earlier than the day following the last day for which he [or she] received regular compensation.*" (Italics added.) Astorga posits two questions for our review:

3

(1) whether donated sick leave or vacation time from co-workers is considered "regular compensation" of the disabled employee under section 31724, and (2) whether the incremental payments of sick leave, vacation and holiday pay should be "compressed" to achieve an earlier date of retirement. We conclude that the first question is not properly before us, and that the second question is answered by *Katosh, supra,* 163 Cal.App.4th 56.

*Standard of Review*

We review de novo Astorga's challenge to the trial court's application of section 31724 to the stipulated facts. (*In re Retirement Cases* (2003) 110 Cal.App.4th 426, 443; *Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 437.) In applying this standard, the interpretation of the agency charged with applying the statute is accorded weight, but is not dispositive. (*Santa Clara Valley Transp. Authority v. Rea* (2006) 140 Cal.App.4th 1303, 1314.)

Any ambiguity or uncertainty in the meaning of pension legislation should be resolved in favor of the pensioner. (*Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483, 490.) Such construction, however, must be consistent with the clear language and purpose of the statute. (*In re Retirement Cases, supra,* 110 Cal.App.4th at p. 439.) Where the meaning of a statute is without ambiguity, doubt or uncertainty, the statutory language controls. (*Security Pacific National Bank v.Wozab* (1990) 51 Cal.3d 991, 998.)

*Donated Vacation and Sick Leave Credits*

Astorga claims that the Board and the trial court erred by finding that the donated sick leave or vacation pay credits from other employees constituted "regular compensation" under section 31724. Astorga asserts there is no authority discussing whether donated leave qualifies as the "regular compensation" of the disabled employee as opposed to the "regular compensation" of the donor employee.

The Board maintains this issue was not preserved for review. We agree. Astorga not only forfeited the issue by failing to raise it in the administrative or trial court proceedings (*Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11), but she also stipulated as

4

a matter of fact that all the "amounts she received from December 2011 through December 8, 2013 were 'regular' compensation pursuant to . . . [s]ection 31724 and the Guidelines."  By stipulating that the donated leave was regular compensation, Astorga mooted any potential dispute regarding the factual or legal significance of the leave credits.  She also waived the right to assert the purported error under the doctrine of invited error.  (See *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 ["'Where a party by his conduct induces the commission of error, he is estopped from asserting it as a ground for reversal' on appeal"]; *Cushman v. Cushman* (1960) 178 Cal.App.2d 492, 498 ["one cannot on appeal complain of rulings assented to or acquiesced in by him in the court below"].)

*Effective Date of Disability Retirement*

Astorga contends that, regardless of the source of her sick leave, vacation or holiday pay, the effective date of her disability retirement should be calculated based on the last day she would have received such compensation had she not elected to take it incrementally to preserve her health insurance coverage.  She maintains the Board and the trial court should have liberally construed section 31724 to treat all of her leave as being taken in consecutive pay periods commencing in December 2011 rather than over a two-year period.

Astorga cites no current authority for this construction of section 31724.  Instead, she urges us to revive a policy the Board applied prior to adopting the Guidelines in 2009.  At that time, the Board calculated the effective date for disability retirement based on the last day the employee was compensated for actually working.  Any leave time received after that date was effectively offset by postponement of disability retirement until after the date the employee would have received the leave time had it been paid in consecutive pay periods.  The Board changed this policy in 2009 to conform to the holding in *Katosh, supra,* 163 Cal.App.4th 56, that a disability retirement is effective under section 31724 the day after the disabled employee's accrued leave is actually exhausted.

5

In *Katosh*, the appellant applied for disability retirement after she ceased working. (*Katosh, supra,* 163 Cal.App.4th at pp. 59-60.) Two years later, she briefly returned to "in pay status" with her employer, but did not provide any services. She received a payment of 40 hours of sick leave and vacation pay, giving her the hours necessary to reinstate her health insurance pending a final decision on her disability retirement application. (*Id.* at p. 60.) When her application was approved, the appellant's retirement date was set as the day after she received the 40 hours of sick leave and vacation pay. (*Id.* at p. 61.)

The appellant contended that "regular compensation," as used in section 31724, did not include sick leave or vacation pay. (*Katosh, supra,* 163 Cal.App.4th at p. 61.) The court disagreed, holding that receipt of sick leave or vacation pay by an employee during a leave of absence constitutes "regular compensation." (*Id.* at pp. 77-78.) It further concluded that receipt of such pay postpones the effective date of a disability retirement "until the last day the employee utilizes sick leave or vacation." (*Id.* at p. 78.) The court found it irrelevant that the amount received was intermittent and less than the full amount of compensation usually received for a single pay period. (*Ibid.*)

Like the appellant in *Katosh,* Astorga knew or should have known the consequences of choosing to retain her health benefits in lieu of receiving retroactive disability retirement. (See *Katosh, supra,* 163 Cal.App.4th at p. 78.) It is undisputed that the Board provided Astorga with a copy of the Guidelines, which also are posted on its website, and that she was represented by counsel when she elected to remain on the County payroll until the effective date of her disability retirement. As the trial court aptly observed, Astorga's decision to remain employed through December 8, 2013, "was probably the wise decision on her part because it allowed her additional donations of leave time from coworkers, it allowed her the ability to obtain additional leave time and holiday pay accruals that she would not have had over a shorter period of time, and it allowed her to maintain her medical insurance."

In sum, *Katosh* confirmed the bright line rule that disability retirement benefits are not available until the day following the day paid leave was last received. By

6

Astorga's own admission, the last day she received regular compensation in the form of paid leave was December 8, 2013.  Thus, under section 31724, as interpreted by *Katosh,* her disability retirement was effective on the following day, i.e., December 9, 2013.  The trial court properly denied her petition for writ of mandate challenging that date.

DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs on appeal.


PERREN, J.

We concur:


GILBERT, P. J.


YEGAN, J.

7

Donna D. Geck, Judge

Superior Court County of Santa Barbara
_____

Ghitterman, Ghitterman & Feld, Russell R. Ghitterman, for Plaintiff and Appellant.

Reicker, Pfau, Pyle & McRoy LLP, Alan A. Blakeboro, for Defendant and Respondent.

Filed 3/2/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| SARA ASTORGA,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>RETIREMENT BOARD OF THE SANTA BARBARA COUNTY EMPLOYEES RETIREMENT SYSTEM,<br><br>  Defendant and Respondent. | 2d Civil No. B263325<br>(Super. Ct. No. 1468905)<br>(Santa Barbara County)<br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION |

THE COURT:

The opinion in the above-entitled matter filed on February 2, 2016, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.