Filed 8/3/23  Doe v. Ford Models CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JANE DOE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>FORD MODELS, INC., A NEW YORK CORPORATION,<br><br>Defendant and Appellant. | B318923<br><br>(Los Angeles County Super. Ct. No. 21STCV01747) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig D. Karlan, Judge.  Affirmed.

Wolf, Rifkin, Shapiro, Schulman & Rabkin, Matthew Oster, and Michael Sigall for Defendant and Appellant.

Schimmel & Parks, Alan I. Schimmel, Michael W. Parks, and Arya Rhodes for Plaintiff and Respondent.

This appeal concerns a motion to compel arbitration filed by defendant and appellant Ford Models, Inc. (Ford).  The trial court denied Ford's motion to compel plaintiff and respondent Jane Doe (Doe) to arbitrate her sexual assault-related claims against Ford for two independently sufficient reasons, one of which is a provision of the California Arbitration Act (CAA) that permits a trial court to deny a motion to compel arbitration where pending litigation with a third party would defeat the purposes of arbitration and risk inconsistent judgments.  Ford argues this reason is flawed because the Federal Arbitration Act (FAA), not the CAA, governs the arbitration agreement.  Ford, however, never made that argument below—indeed, it never invoked the FAA at all—and the forfeiture of that point precludes reversal on appeal.

## I.  BACKGROUND

### A.     *The Facts as Alleged in the Complaint*

In February 2017, Ford offered Doe, who was then a model living in Los Angeles, a professional sportswear modeling job in Europe.  Doe flew to New York and then boarded a private plane headed to London with Jordan Doner (Doner), a photographer, Gerald Banks (Banks), then CEO of Ford, and another model.  Contrary to Ford's representations, the ensuing events did not involve any professional photo shoots.

During the flight, Doe fell asleep and woke to Doner rubbing her thigh.  Doner later told Doe he wanted to photograph her in a jacket and a sheer thong.  Doe acquiesced because she was trapped and scared.

The situation did not improve after Doe and the others arrived in London.  Doner wanted to photograph Doe wearing a

2

white dress under running water in a shower, and Doner and Banks wanted to take Doe and the other model to a nightclub and photograph them there. Doner requested Doe and the other model accompany the men on what appeared to be dates. Doe also overheard Doner and Banks making sexual comments about other models and discussing how to get other women on trips with them. She became concerned she was being targeted for sex.

Doner instructed Doe to tell her agents that she wanted to go to Paris with him. Banks wanted to watch the Superbowl in Paris but he did not want to pay Doe's agency her day rate for another day. Doe contacted her agents in California and reported what was happening. When Doe's agency learned of the circumstances, they instructed her to leave. Doe made her own arrangements to return to Los Angeles.

### B.     The Proceedings Below

Doe filed a complaint against Ford, Doner, and Banks in January 2021. The complaint alleged two causes of action. First, Doe alleged Ford, Doner, and Banks violated Civil Code section 52.5 by acting with the intent to obtain forced labor or services or with the intent to make unwanted sexual advances. She alleged they knowingly and substantially restricted her personal liberty through fraud and deceit, made false representations, removed Doe from California so as to isolate her in a foreign country, and placed her in fear for her well-being. Second, Doe alleged defendants engaged in unfair business practices in violation of Business and Professions Code section 17200: false imprisonment, trafficking Doe through fraud and deceit,

3

misappropriation of her name and likeness, unwanted sexual touching and duress, and fraud and misrepresentation.

In July 2021, Ford filed a motion to compel arbitration. The notice of motion and the memorandum of points and authorities recited that the motion was brought pursuant to Code of Civil Procedure sections 1281.2 and 1281.4.[1]  Ford argued that pursuant to section 1281.2, the court was required to order the case to arbitration because Doe and Ford were parties to a contract with an arbitration clause.  Ford acknowledged section 1281.2 identifies three circumstances in which arbitration need not be compelled, but it contended none of these three exceptions applied.  The motion did not mention the FAA.

Ford attached a copy of its contract with Doe to the motion. The contract, an agency and management agreement, states Doe engaged Ford as her exclusive agent in Illinois, and as her exclusive personal manager in the United States, Canada, Brazil, and France "with respect to advising, counseling, promoting, and contracting print, runway, fitting, modeling and talent work . . . ." The agreement also includes the following arbitration provision:

> "If a dispute arises out of or relates to this Agreement, or the breach thereof, and if the dispute cannot be settled through negotiation, [Doe] and [Ford] may mutually agree to first try in good faith to settle the dispute by mediation, by a sole mediator. [ . . . ]  If the dispute cannot be resolved within three (3) hours of mediation, any dispute, controversy or claim arising out of or relating to this Agreement, or

---

[1]  Undesignated statutory references that follow are to the Code of Civil Procedure.

4

the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois, without regard to principles of conflicts of laws. The fees of arbitration shall be borne equally by [Doe] and [Ford] and each party shall pay their own attorneys' costs and fees. [Doe] and [Ford] agree that said mediation and/or arbitration shall be held . . . in Chicago, Illinois. The jurisdiction of the arbitration tribunal shall be exclusive regarding said claims and said claims shall not be tried in any other arbitration tribunal. The content and result of mediation and/or arbitration shall be held in confidence by all participants, each of whom will be bound by an appropriate confidentiality agreement."

Doe opposed the motion to compel arbitration and argued, among other things, that the scope of the arbitration clause did not extend to Doe's claims alleging sexual abuse and human trafficking, the confidentiality provision was illegal and unenforceable, the contract forced a waiver of Doe's statutory rights, and the burdens and costs created by the arbitration provision were unconscionable.

Ford filed a reply brief which did not invoke or otherwise mention the FAA.

The trial court denied the motion to compel arbitration on two independently sufficient grounds. First, the court concluded Doe's claims of sexual misconduct and/or human trafficking did not arise out of her agreement with Ford regarding modeling work. Second, and more important for our purposes, the court concluded compelling arbitration would split the action and thus defeat the purposes of the arbitration statute—a scenario in which section 1281.2 states arbitration need not be compelled. Specifically, the agreement was between Doe and Ford only, not Doner or Banks. At the time the court decided the motion, neither Doner nor Banks had moved to compel arbitration, and the court found Doe's action against Doner and Banks would thus continue in superior court if her claims against Ford were sent to arbitration.[2] The trial court further found the claims against the three defendants were substantially intertwined, such that litigating in two forums would require the parties to duplicate their efforts while risking inconsistent outcomes.

## II. DISCUSSION

"Under Code of Civil Procedure section 1281.2, subdivision (c), of the CAA . . . , a court may refuse to compel arbitration if '[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party,

---

[2]     In response to a request filed by Doe, we previously took judicial notice of the docket in this case as of November 8, 2022. (Evid. Code, § 452, subd. (d)(1).) The docket reflects that after the court's ruling on Ford's motion, Banks filed a motion to compel arbitration. It also reflects, however, that Doner had not filed such a motion as of that date.

6

arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact.' (§ 1281.2(c).)" (*Victrola 89, LLC v. Jaman Properties 8 LLC* (2020) 46 Cal.App.5th 337, 342.)

Ford argues it was error to rely on this provision of the CAA to refuse to compel arbitration because the agreement between Ford and Doe implicated interstate commerce such that the FAA, not the CAA, applies—and the FAA has no analogous exception that allows foregoing arbitration when there is a risk of conflicting rulings in different fora. The fatal problem for Ford, however, is that it never cited the FAA or urged its applicability in the trial court.[3] Instead, Ford relied solely on California law in moving to compel arbitration, arguing arbitration was compulsory under sections 1281.2 and 1281.4. The failure to argue the FAA below forfeits the point on appeal. (*Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11; see also *JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178 ["Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider"].)

Ford's appellate briefing does not grapple with the forfeiture problem. Instead, the best Ford musters is to assert this court reviews a trial court's determination of a motion to compel arbitration de novo. True, but irrelevant. The forfeiture doctrine still applies (*Meridian Financial Services, Inc. v.*

---

[3]     We have no reporter's transcript (or acceptable substitute) of the hearing on the motion to compel arbitration because Ford, as the appellant, has not provided one.

*Phan* (2021) 67 Cal.App.5th 657, 699-700), and we see no good grounds to exercise our discretion to excuse the forfeiture.  In fact, there are good reasons not to: Ford was not just silent in the trial court—it affirmatively urged the CAA applied—and Ford presents us with no argument as to why we should reach the forfeited issue.

Because Ford has forfeited the only argument it makes in support of the contention that the trial court erred in relying on section 1281.2, subdivision (c) to deny the motion to compel arbitration, we shall affirm denial of the motion on this ground. We need not address any other issues Ford raises.

## DISPOSITION

The judgment is affirmed.  Doe shall recover her costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, Acting P. J.

We concur:


MOOR, J.


KIM, J.


8