Filed 3/29/21  Robert I. v. Alisa B. CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ROBERT I.,<br><br>        Plaintiff and Respondent,<br>v.<br>ALISA B.,<br><br>        Defendant;<br>LAURENCE B.,<br><br>        Intervener and Appellant. | A157943<br><br>(Alameda County<br>Super. Ct. No. HF11598669) |

This is an appeal from attorney fees orders that were issued in connection with a long-running and bitter dispute over the custody of A., a minor (Minor).  After a trial that extended for more than 10 days over several months in 2018, the trial court denied a request by Minor's maternal grandfather, Laurence B. (Grandfather), for nonparent custody, and ordered that Minor's father, Robert I. (Father), would retain sole custody.  The court ordered Grandfather to pay attorney fees to Father's counsel and to Minor's court-appointed counsel.  Grandfather challenges the fee awards on appeal, contending that the court's orders were in violation of the applicable statutes and represented an abuse of discretion.  We conclude that Grandfather fails to show error, and therefore we affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying matter began in October 2011, when Father, representing himself, filed a petition to establish parental relationship as to Minor, who was then three years old. According to the declaration filed with the petition, Father and Minor's mother, Alisa B. (Mother), had been together in Los Angeles when they broke up and Mother returned to Grandfather's in northern California, taking Minor without asking or telling Father. Father sought an award of joint custody and reasonable visitation.

A.  *Proceedings Through 2016, Including Appointment of Minor's Counsel*

The record before us includes very few documents from October 2011 through August 2013. Then there is nothing at all until a June 2016 order in which the trial court on its own motion found that good cause existed to appoint counsel for Minor under Family Code section 3150, subdivision (a), appointed attorney Dean Feldman to represent Minor, and reserved jurisdiction to determine his compensation.[1]

We draw our account of what happened after Father's 2011 petition was filed from information provided by the trial court in various orders and in its 2018 statement of decision. After Father filed his petition, Father and Mother litigated Father's timeshare with the Minor and related issues for two years. Father progressed from supervised visits to unsupervised visits with supervised exchanges. In July 2013, the court ordered that Minor would

---

[1] Subsequent statutory references are to the Family Code; references to "rules" are to the California Rules of Court. Section 3150, subdivision (a) authorizes the court to appoint private counsel to represent the interests of the child in a custody or visitation proceeding if the court determines that it would be in the best interest of the child to do so, provided that the court and counsel comply with certain requirements set forth in rules 5.240, 5.241, and 5.242. Rule 5.240(b) authorizes the court to appoint counsel for the child on the court's own motion.

remain in Mother's custody, but in early October 2013 Minor moved in with Grandfather because Mother's health had deteriorated. Later that month, Minor moved in with a maternal uncle (Uncle) and his wife (Aunt). In December 2013, Father filed a Request for Order seeking custody.

In 2014, after Mother's counsel withdrew from the case, Grandfather moved to intervene in the action. In November 2014, Grandfather and Uncle were joined as parties. After a comprehensive child custody evaluation was conducted, a trial on Father's December 2013 request for custody was held in 2015. Father represented himself at trial, Mother did not appear, and Grandfather and Uncle were represented by counsel.[2] The result of the trial was a January 6, 2016 order awarding custody to Uncle and Aunt.

During a visit with Father over winter break 2015-2016, Minor made allegations of abuse against Uncle, and remained with Father until early February 2016, when the court issued an order awarding sole custody to Aunt and prohibiting Uncle from having contact with Minor.

In June 2016, the court appointed Feldman to represent Minor in response to a Request for Order filed by Grandfather, who sought nonparent custody for himself, and supervised visits for Father. As we shall explain, the trial on Grandfather's request for custody did not begin until March 2018.[3]

---

[2] Grandfather and Uncle were represented by the same attorney. According to the trial court, Grandfather "was not considered as a potential custodial adult in the 2015 child custody evaluation. He declined the evaluator's request to participate in psychological testing; his wife was not interviewed. His home was not visited by the evaluator. In fact, the evaluator explicitly rejected him as a custodial guardian." Uncle and Aunt are not parties to this to this appeal.

[3] Grandfather's Request for Order is not included in the record. Grandfather attempted unsuccessfully to have Minor's counsel removed less than one month after the appointment.

Shortly after Feldman was appointed to represent Minor, the court ordered Father and Grandfather to advance the costs for a supplemental custody evaluation.

In July 2016, attorney John Larson substituted in as counsel for Father. Later in the summer, the trial court granted a request made by Minor's counsel and awarded Father temporary custody of Minor pending the supplemental custody evaluation that the court had previously ordered. From summer 2016 through the 2018 trial, Minor resided with Father.[4]

In October 2016, the trial court continued the matter to mid-December for receipt of the supplemental custody evaluation and trial setting. In November 2016, attorney Larson substituted out as counsel for Father. The court subsequently set trial to begin in March 2017.

B.     *Order to Show Cause as to Father's Attorney Fees*

On February 17, 2017, the court issued an order to show cause why it should not order Grandfather to advance $10,000 in attorney fees to Father under the provisions of the Uniform Parentage Act (§ 7600 et seq., UPA).[5] In

---

[4] Minor had visits with Grandfather during the time he lived with Father.

[5] The court invoked section 7605, subdivisions (a) and (e). Section 7605, subdivision (a) states: "In any proceeding to establish physical or legal custody of a child or a visitation order under this part . . . the court shall ensure that each party has access to legal representation to preserve each party's rights by ordering, if necessary based on the income and needs assessments, one party . . . to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding." Section 7605, subdivision (e) states that an application for a temporary order making an award of attorney fees "shall be made by motion on notice or by an order to show cause." (Italics added.)

The court further stated that if it were to order fees to be advanced, it would do so under the factors set out in section 7605, subdivision (b), which

4

the order, the court noted that the case was highly contentious, "with repeated disagreements about [Minor's] schedule and other matters. The disparity between Father's self-representation and Grandfather's ability to retain counsel has complicated the proceedings to date and made it difficult for the court to both proceed in an orderly manner and to determine what is in the best interest of [Minor]." Among the examples cited by the court were unsupported allegations made by Grandfather, Grandfather's failure to cooperate with Minor's counsel, and Grandfather's delay in cooperating with the beginning of the supplemental custody evaluation, which did not begin until September, even though it had been ordered in June. The court also expressed concern with the effect of Father's lack of representation on the content of the evaluation, explaining that Grandfather had noticed and taken the deposition of the principal of the school Minor attended while in Grandfather's care, with the result that the principal and teacher refused to participate in the supplemental custody evaluation, something the court learned only when the evaluation was complete. Father received a copy of the deposition notice, brought it to court and asked the court about it, but the court could not give Father advice or answer his questions, and thought it would be improper to object to the deposition taking place on its own motion.

---

states, "When a request for attorney's fees and costs is made under this section, the court shall make findings on whether an award of attorney's fees and costs is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties. If the findings demonstrate disparity in access and ability to pay, the court shall make an order awarding attorney's fees and costs. A party who lacks the financial ability to hire an attorney may request, as an in pro per litigant, that the court order the other party, if that other party has the financial ability, to pay a reasonable amount to allow the unrepresented party to retain an attorney in a timely manner before proceedings in the matter go forward."

The court observed that if Father had been represented, he could have requested orders ensuring the participation of the principal in the evaluation, which would have resulted in a more complete evaluation.

The court observed that "[l]opsided legal representation can effectively deny the court access to all necessary information about the child's wellbeing and needs and thereby affect the court's ability to order what is best for the child."  The court set a briefing schedule, instructing Grandfather and any parties opposing the proposed order to file and serve any opening brief and supporting evidence, including an Income and Expense declaration, and a declaration regarding fees and costs already incurred in the proceeding. Father and any party supporting the order were to file an opposition brief and supporting evidence, including an Income and Expense Declaration.  A hearing on the order to show cause was set for early March 2017, about two weeks before the scheduled trial date.

Grandfather filed a memorandum of points and authorities in opposition to the court's proposed order, arguing that although Grandfather had the ability to pay the amount in question, it was improper for the court to order payment of fees in the absence of a request by Father, that Father had no need of assistance to pay counsel, and that the order would result in delay because the retention of new counsel for Father would lead to delay in the trial.  Despite the court's order, Grandfather did not file an Income and Expense Declaration, or a declaration as to the amounts he had spent on fees and costs, but he did file a declaration stating that he had the financial ability to pay the proposed $10,000.  Grandfather's counsel filed a declaration stating that on February 24, 2017 (a week after the order to show cause was filed) he had taken Father's deposition, and recounted some of Father's sworn

6

testimony regarding his income and assets.[6] Grandfather's counsel stated he would have a transcript of the deposition testimony available for the court at the time of the hearing. Father did not file a brief, or an Income and Expense Declaration.

At the hearing on the order to show cause, Grandfather's counsel argued that before making an award of fees "you have to at least get a financial statement from him under penalty of perjury so we can look at that." The trial court informed the parties that although it did not have financial declarations from either party, it had information about Father's income and assets from the responsive papers that Grandfather had filed, and it had considered that information. The court continued, "The law does not require that a person have zero assets. And I didn't find anything in the information you obtained in the deposition to change the posture of this case that [Father] does—nothing in what you had to say showed me that he has the resources to actually adequately litigate this next phase of the case." Father informed the court that he planned to re-hire attorney Larson. The court ordered Grandfather to advance $10,000 to Father's attorney within 24 hours of receipt of a substitution of attorney and ordered Father to file and

---

[6] According to the declaration, Father testified that he could earn over $20 per hour if he chose to accept employment as a mason, but he had chosen not to work and to pursue a business called "Rap Records." Father claimed that he had not generated any income from the business but had spent about $20,000 in the past year to construct a recording studio, and currently had between $10,000 and $40,000 in his bank account. Father also testified that he had paid his former counsel, who had represented him in 2016, a retainer of $5,000; that his children received government assistance; that his wife earned $30,000 in 2016; and that rent from roommates covered the cost of the mortgage on his home, rendering his housing costs minimal.

serve an Income and Expense Declaration on or before March 24.[7]  A substitution of attorney was served on Grandfather on March 21, but Grandfather failed to pay the required advance.  According to Grandfather's opening brief on appeal, "the Court vacated the trial date in March 2017 until [Grandfather] advanced $10,000 in fees to [Father], which he did," yet Grandfather provides no citation to the record, and does not disclose when the advance was paid.  In fact, Grandfather did not make the required payment until October 2017.  At trial, Grandfather testified that although he had paid the $10,000 ordered by the court, he considered the issue of Father's attorney fees to be an unresolved issue.

C.    *Minor's Counsel Requests Attorney Fees*

Meanwhile, in March 2017, Minor's counsel requested an order that Grandfather pay him a retainer of $10,000 and compensate him at his regular rate of $300 per hour.  Grandfather opposed the request, and at a hearing on the request in May 2017, counsel for Grandfather informed the court that he needed to do further research as to whether Feldman's fees could properly be imposed on Grandfather.  The court ordered Feldman to file and serve his billing statements and ordered Grandfather to file legal authorities as to the issue by the same date.  The parties did so, and after Feldman filed his billing statements, Grandfather filed an objection to the request for fees.  The issue of fees for Minor's counsel remained pending until the trial.

---

[7] In an order filed March 28, the trial court on its own motion vacated the requirement that Father serve an Income and Expense Declaration, "[w]hether or not he has already complied" with it.  The Register of Actions does not reflect any such declaration being filed.

8

D.    *Trial, Judgment, and Appeal*

Litigation between the parties continued through 2017 and into 2018. The trial began in March 2018, with the Honorable Thomas Nixon presiding, and continued over multiple days, ending in September 2018.  The trial court identified the issues before it as follows:  whether to grant Grandfather's request for an order providing him with custody of Minor; whether Grandfather should be granted visitation if he was not awarded custody; and attorney fees and costs.

The details of the trial are largely irrelevant to this appeal, except that the record shows that counsel understood that issues of attorney fees would likely be handled at the end of the case.  Near the end of the trial Father's counsel requested an interim order for fees, and the court observed that Feldman "as Family Code § 3150 attorney for the minor has . . . been billing the court for services which under Family Code § 3153 should be borne by the parties."[8]  The court ordered the parties to file fee declarations and ordered Income and Expense Declarations from parties except for Grandfather, "who stipulated that he could pay any reasonable amount of fees, even into the hundreds of thousands."

Accordingly, in August 2018, Feldman submitted his billing records and information about payments he had received from the court; Larson filed

---

[8] Section 3153 provides, "(a)  If the court appoints counsel under this chapter to represent the child, counsel shall receive a reasonable sum for compensation and expenses, the amount of which shall be determined by the court.  Except as provided in subdivision (b), this amount shall be paid by the parties in the proportions the court deems just.  [¶] (b)  Upon its own motion or that of a party, the court shall determine whether both parties together are financially unable to pay all or a portion of the cost of counsel appointed pursuant to this chapter, and the portion of the cost of that counsel which the court finds the parties are unable to pay shall be paid by the county."

a request for attorney fees and a supporting declaration signed by Father, along with invoices and letters related to attorney fees; Father filed an Income and Expense Declaration; and attorneys Ward and Eshoo, who represented Grandfather, filed declarations regarding the fees they had billed to Grandfather and the payments they had received.

Feldman sought about $132,000 in fees billed at his regular rate of $300 per hour. As of March 2018, he had received about $16,000 in fees from the court from his work on the matter.[9]

Father requested that Grandfather, who had paid $10,000 toward attorney Larson's fees in October 2017, pay an additional amount of about $55,000 to cover $45,000 in charges that had been billed and $10,000 in estimated future charges. Father claimed that his monthly income was about $2,100, and he maintained that he had no ability to pay Larson's fees.

As for Grandfather's own attorneys, Ward had billed Grandfather about $67,000 in fees and costs from March through August 2018 and had been paid in full. Eshoo had billed Grandfather about $425,000 in fees and costs from July 2016 through August 2018 and had been paid in full through July 2018.

In an order issued in early September 2018, the court found that under section 3153, a determination had to be made as to reasonable compensation for Minor's counsel, and that the court would consider ordering reimbursement for funds already expended by the court in compensating Minor's counsel. The court further found that Father "is in need of an

---

[9] Feldman informed the court that for his work on cases for which he was appointed from August 2014 through July 2016, he received from the court a flat fee based on the number of active cases, and that since June 2016 his flat fee in those cases had been $2,000 a month.

10

interim order of fees to continue to prosecute this case to completion," and that Grandfather had the ability to pay fees. The court ordered Grandfather to pay Father's counsel an additional $25,000 within eight days, stating that the order was an interim order and that a further order, as well as the question of compensation for Minor's counsel, would be considered at a hearing later that month.

At the hearing, the court set a schedule for the parties to submit closing briefs, to include argument regarding attorney fees. And the same day as the hearing, Feldman and Larson submitted supplemental information about the fees they had incurred and the payments they had received. Feldman stated that the invoices for his work on the case through September 16, billed at his regular rate of $300 per hour, totaled $137,010, and that he had received about $17,360 for fees from the court for the period through July 2018. Larson stated through September 17 Father owed $29,180 in attorney fees, which reflected the receipt of a check from Grandfather for $25,000, and he estimated that an additional $2,300 would be incurred to prepare a written closing statement.

In December 2018 the trial court issued a 35-page statement of decision in which it denied Grandfather's request for nonparent custody and determined that custody of Minor would remain with Father. Eleven pages of the decision were dedicated to the issue of attorney fees. The court determined that Grandfather was to pay Father's attorney fees of $31,820. In addition, Grandfather was to pay Minor's attorney fees of $137,010, and within 15 days of receipt of that payment, Minor's attorney was to reimburse the court for any amounts he had received from the court for his services in the case.

Judgment was entered, and Grandfather timely appealed, challenging only the attorney fees orders.

## DISCUSSION

A.   *Principles of Appellate Review*

We begin by summarizing some of the fundamental principles that guide our consideration of the issues before us.

As a general matter, "[w]e presume an attorney fee award is correct unless the appellant demonstrates the trial court abused its discretion." (*Taylor v. County of Los Angeles* (2020) 50 Cal.App.5th 205, 209.)  However, we review de novo the determination of whether the trial court had the statutory authority to make a fee award.  (*George v. Shams-Shirazi* (2020) 45 Cal.App.5th 134, 138 (*George*).)  Even under de novo review, it is the appellant's responsibility to affirmatively demonstrate error (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564), and our review is limited to issues which the appellant has adequately raised and supported.  (*Mark Tanner Construction, Inc. v. Hub International Insurance Services* (2014) 224 Cal.App.4th 574, 584.)  "We are not required to examine undeveloped claims or supply arguments for the litigants."  (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 (*Allen*).)  Accordingly, claims that are not supported with meaningful argument and citations to authority are appropriately treated as forfeited.  (*Ibid.*)  "In addition, citing cases without any discussion of their application to the present case results in forfeiture."  (*Ibid.*)

An appellant must "cite the particular portion of the record supporting each assertion made."  (*Williams v. Williams* (1971) 14 Cal.App.3d 560, 565.)  We disregard assertions and arguments that lack record references.  (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 (*Duarte*).)

12

Moreover, " '[i]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court.' . . . 'Generally, issues raised for the first time on appeal which were not litigated in the trial court are waived. [Citations.]' " (*Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11, fn. omitted (*Newton*).)

B.   *Challenge to Father's Fee Award*

Grandfather argues that the trial court lacked authority to order him to advance $10,000 in fees in 2017, because Father failed to request fees and failed to file a current Income and Expense Declaration. Grandfather further argues that because the Income and Expense Declaration that Father filed in August 2018 was deficient, the trial court necessarily failed to consider the necessary statutory factors in its subsequent award of fees to Father and thereby abused its discretion.[10] The arguments lack merit.

1.   *Order to Advance $10,000 in Fees*

We review de novo Grandfather's argument that the court lacked authority to order him to advance $10,000 to Father's attorney for fees in the absence of a request from Father and in the absence of a current Income and Expense Declaration. (*George, supra*, 45 Cal.App.5th at p. 138.)

Grandfather fails to persuade us that the trial court erred in ordering the payment of fees, because Grandfather offers no authority to support his implicit claim that the trial court could not properly award fees to Father after issuing an order to show cause. (*Allen, supra*, 234 Cal.App.4th at p. 52.)

---

[10] Neither Father nor his counsel filed a responsive brief in this appeal. Accordingly, we decide the appeal as to Father's attorney fees based on the record, Grandfather's opening brief, and Grandfather's oral argument before this court. (Rule 8.220(a)(2).)

13

The trial court's order rested on the UPA. Specifically, the court relied on the statutory requirement that the court "ensure that each party has access to legal representation to preserve each party's rights" by ordering one party to pay another party's attorney fees, if that is necessary, based on an assessment of income and needs (§ 7605, subd. (a)) and on the provision allowing the use of an order to show cause procedure to award fees. (§ 7605, subd. (e).) But Grandfather makes no reference to the UPA at all, except for his concession that the court has discretion to award attorney fees in a parentage action.

To support his contention that the trial court could not award fees in the absence of a Request for Order from Father, Grandfather relies on *Mooney v. Superior Court* (2016) 245 Cal.App.4th 523, but his reliance is misplaced. First, *Mooney* was not decided under the UPA; it was decided under section 2032, which applies to proceedings for dissolution of marriage (*ibid.*), and although Grandfather provides a quotation from *Mooney,* he does not discuss the case or explain why it should apply to an order under section 7605. Second, although section 2031, subdivision (a)(1), like section 7605, subdivision (e), allows for the use of the order to show cause proceeding in connection with an award of attorney fees, the trial court in *Mooney* (unlike the court here) did not issue an order to show cause. (See *id.* at pp. 528-529.) Instead, the trial court in *Mooney* simply announced, sua sponte, at a hearing on wife's motion for settled statement, that it was going to order wife to pay husband's attorney fees in connection with the settled statement, thus linking its decision on wife's motion with a decision on attorney fees in violation of the rules governing the preparation of settled statements. (*Id.* at pp. 528, 534-535.) Third, the absence of a motion by a party seeking attorney fees was not the only reason that the trial court's fee award was reversed.

14

The Court of Appeal noted that the trial court failed to make statutorily required findings as to a disparity in the parties' ability to pay fees, and also that the trial court based the award on irrelevant considerations. (*Id.* at pp. 536-537.)

Grandfather relies on rule 5.92(b)(2) in contending that the trial court could not award fees in the absence of an Income and Expense Declaration. But that rule by its terms concerns the requirements of a Request for Order concerning attorney fees. Grandfather provides no argument or authority to support his implicit contention that the rule applies in the context of an order to show cause, and we will not supply an argument for him. (See *Allen*, *supra*, 234 Cal.App.4th at p. 52.) In any event, section 7605, subdivision (a) requires the trial court to consider income and needs assessments, and the trial court did that here. Although the court did not have an Income and Expense Declaration from Father, or from Grandfather for that matter, the court had Grandfather's declaration stating that he had the ability to pay $10,000 in Father's fees, and that he had borne the cost of Minor's transportation to and from the Bay Area for visits since July 2016 and had paid for all of Minor's medical care and treatment without contribution from Father. The court also had Grandfather's counsel's declaration recounting Father's sworn testimony regarding his income and assets, and an offer to provide a transcript of the testimony. The court stated that it considered the information before it and concluded that Father did not have the resources to adequately litigate the next phase of the case.

In these circumstances, Grandfather has not shown legal error by the trial court in ordering the payment of a $10,000 advance toward Father's attorney fees.

15

## 2.    *Order to Pay $31,820 in Attorney Fees*

Grandfather argues that the fee request filed by Father at the conclusion of the trial did not comply with statutory requirements because Father's Income and Expense Declaration was deficient, in violation of rule 5.92(b)(2).  That rule requires a party seeking fees to "complete" a current Income and Expense Declaration that includes "the documents specified in the [Income and Expense Declaration] form . . . that demonstrate the party's income."  (Rule 5.92(b)(2)(A) and (B).)  Here, Father filed and served an Income and Expense Declaration, signed on the day of filing under penalty of perjury, along with his most recent state and federal income tax returns with supporting schedules.  Grandfather cites no authority to suggest that it is a legal error for a trial court to award attorney fees in the absence of a perfect Income and Expense Declaration, and we are not prepared to make such a determination.

Grandfather also argues that the flaws in Father's Income and Expense Declaration, including inconsistencies between the information in the Declaration and Father's testimony at trial, prevented the trial court from exercising its discretion and considering the necessary statutory factors.  This argument is meritless.  Grandfather fails to identify any statutory factor that the court could not or did not consider.  The trial court considered Grandfather's objections to Father's Income and Expense Declaration, and exercised its discretion, as reflected in its detailed Statement of Decision: "While it is true [Father's] Income and Expense Declaration is not a study in specificity, it cannot seriously be argued that he is a man of means even remotely nearing middle class, much less the wealth available to [Grandfather].  To a large extent, [Grandfather's] insistence on seeking custody pushed this litigation.  He had every right to do so and the Court

16

does not fault him for it, but [Father's] fees were largely incurred because of [Grandfather's] actions. The purpose behind an award of attorney's fees is to level the playing field and insure that each party has access to legal representation. (See FC § 7605(a))." The court identified the findings required by section 7605, subdivision (b), made those findings, explained the basis for those findings, and awarded Father $31,820 in attorney fees, in addition to the amount already ordered. Grandfather has not shown any abuse of discretion in the trial court's ruling.[11]

C.    *Challenge to Minor's Fee Award*

Grandfather argues that the trial court acted in excess of its jurisdiction by awarding attorney fees to minor's counsel without complying with statutory requirements. We review this argument de novo and find it unpersuasive.

---

[11] Grandfather contends in passing, and without citing any authority, that Father's filing of the Income and Expense Declaration on August 30, 2018 "did not provide [Grandfather] a reasonable opportunity to respond prior to the Court's issuing its attorney fee order less than a week later," apparently referring to the trial court's interim order, filed on September 5, that Grandfather pay $25,000 in attorney fees beyond the $10,000 that was paid in 2017. This is not appropriate appellate argument, because it lacks citations to authority and because, though it is presented under a heading stating that Father failed to comply with the statutory requirements for an attorney fee request, Grandfather does not identify any statute requiring that an opposing party receive at least a week to respond to a request for fees. In any event, because we conclude that the court did not err in issuing its ultimate fee award to Father, which took account of the previously-paid $25,000, Grandfather cannot show that he was prejudiced by the September 2018 order to pay $25,000. (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 823 [error not reversible absent a showing that it is "reasonably probable that, absent the error, the appellant would have obtained a more favorable result"].)

The Rules of Court require the trial court to "determine the reasonable sum for compensation and expenses for counsel appointed to represent the child in a family law proceeding, and the ability of the parties to pay all or a portion of counsel's compensation and expenses." (Rule 5.241(a).) Compensation must be set at the time of appointment, at the time the court determines the parties' ability to pay, or "[w]ithin a reasonable time after appointment." (Rule 5.241(a)(1).) Further, the court "should determine the parties' ability to pay" at the time counsel is appointed, within 30 days after appointment, or at the "next subsequent hearing." (Rule 5.241(b)(2).) Grandfather claims the trial court erred by waiting until 2018 to determine the compensation for Minor's counsel and the parties' ability to pay that compensation.

Minor's counsel was appointed in 2016, at which time the trial court reserved jurisdiction to determine his compensation. In 2017, Minor's counsel filed his request for an order that Grandfather compensate him at his regular rate of $300 per hour, and the issue was not resolved until the 2018 trial. Certainly it would have been better if reasonable compensation for Minor's counsel had been determined sooner, as the trial court itself recognized. The trial court acts within rule 5.241 if it determines the compensation for Minor's counsel at the time it determines the parties' ability to pay. (Rule 5.241(a)(1)(B).) Here, the trial court found that the first determination of the parties' ability to pay Minor's counsel was its Statement of Decision, and Grandfather does not contest that finding. The determination of compensation for Minor's counsel was made at the same time, in the same document. Although the determination of the parties' ability to pay "should" be made soon after the appointment of Minor's counsel (rule 5.241.(b)(2)), Grandfather cites no authority to suggest that it is

18

necessarily legal error for the trial court to make that determination at a later time.

Grandfather further claims that the trial court erred by failing to analyze the parties' financial circumstances in making the award. The compensation of Minor's appointed counsel is to be paid "by the parties in the proportions the court deems just." (§ 3153, subd. (a).) Rule 5.241(b) requires the trial court to determine the respective ability of the parties to pay all or a portion of appointed counsel's compensation, taking into consideration "factors such as the parties' income and assets reasonably available at the time of the determination" (rule 5.241(b)(1)(A)), and states that the parties must have on file a current Income and Expense Declaration. (Rule 5.241(b)(1)(B).) Grandfather argues that because the trial court did not have a "full and complete Income and Expense Declaration[]" from Father, it could not analyze Father's financial circumstances, and therefore could not determine the parties' respective ability to pay. This argument rests on a premise that we have rejected, specifically, that Father's Income and Expense Declaration was so deficient as to preclude the court from performing the required analysis. The same analysis that supported the trial court's order that Grandfather should pay the fees of Father's counsel, supports the order that Grandfather should pay the considerably higher fees of Minor's counsel.[12]

---

[12] Grandfather's briefs are notably silent as to the following pertinent facts: Grandfather himself never filed an Income and Expense Declaration; Grandfather stipulated that he could pay any reasonable amount of fees, even into the hundreds of thousands of dollars; and Grandfather had incurred and paid hundreds of thousands of dollars of his own attorney fees in the matter.

19

We briefly address and reject Grandfather's additional arguments as to the award of attorney fees to Minor's counsel.

First, Grandfather argues that he was prejudiced by the trial court's failure to comply with rule 5.241. We have concluded that Grandfather failed to show error in the trial court's compliance with rule 5.241. Even if he had shown error, he could not demonstrate prejudice, because he provides no citations to the record to support the vague factual assertions on which his claims of prejudice are based.

Second, Grandfather argues that because Minor's counsel performed his services pursuant to a contract with the County of Alameda and was paid pursuant to that contract, the trial court abused its discretion in ordering Grandfather to pay Minor's counsel's fees. We deem this argument forfeited, because the purported facts on which it rests are not supported by any citations to the record (*Duarte, supra,* 72 Cal.App.4th at p. 856), and because Grandfather offers no explanation of how the sole legal authority he cites might apply to the case before us. (*Allen, supra,* 234 Cal.App.4th at p. 52.)

Third, Grandfather argues that the trial court abused its discretion by making an award of fees without evaluating the reasonableness of the request. This argument is forfeited, because, as with the previous argument, the purported facts on which it rests are not supported by any citations to the record. (*Duarte, supra,* 72 Cal.App.4th at p. 856.) Further, the argument is forfeited because it was not raised below. (*Newton, supra*, 110 Cal.App.4th at p. 11.)

## DISPOSITION

The challenged orders are affirmed. Respondents shall recover costs on appeal.

20

 

_____
Miller J.

WE CONCUR:

_____
Kline, P.J.

_____
Richman, J.

A157943, *Robert I. v. Alisa B.*