Filed 3/27/24  Stebbins v. Cal. Public Utilities Commission CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ALICE STEBBINS, <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> CALIFORNIA PUBLIC UTILITIES COMMISSION, <br><br>     Defendant and Respondent. | A167141 <br><br> (San Francisco County Super. Ct. No. CGC20588148) |

Alice Stebbins was the executive director of the California Public Utilities Commission (CPUC) from early 2018 until she was terminated from her position in September 2020.  She filed suit against the CPUC, alleging she was terminated in retaliation for whistleblowing.  After a trial lasting several weeks, the jury rejected her claims and awarded her no damages.  The only issues on appeal concern two jury instructions:  one that the trial court gave, which stated that the CPUC and the State Personnel Board are separate legal entities, and one that the trial court did not give, CACI No. 204, concerning the intentional destruction of evidence.[1]  Because Stebbins has shown no prejudicial error, we affirm the judgment.

---

[1] CACI No. 204, "Willful Suppression of Evidence," states:  "You may consider whether one party intentionally concealed or destroyed evidence.  If

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Stebbins's Role at the CPUC*

Stebbins was hired as the executive director of the CPUC in February 2018.  She reported to the five CPUC commissioners, including the CPUC president, all of whom are appointed by the Governor.  There was testimony at trial that when Stebbins was hired, the commissioners recognized the CPUC needed a strong administrator and manager to improve the agency's policies, procedures, and processes, and they hired Stebbins because of her administrative skills and experience.

B.  *Investigations into Stebbins's Hiring Practices*

In late March 2019, Candace Hyatt, then the human resources director at the CPUC, had concerns that Stebbins was inappropriately involved in personnel matters.  Hyatt had heard from her staff that some recent CPUC hires had previous relationships with Stebbins and her staff; that some recent hires were being awarded higher-than-appropriate salaries; and that job candidates with higher qualifications were being passed over for less competitive candidates.  Hyatt told the CPUC's chief internal auditor, Virginia Veneracion-Alunan, of her concerns.  The chief internal auditor then began investigating the matter with her subordinate, Daniel Washburn.

In July 2019, Marybel Batjer was appointed president of the CPUC. Before she was sworn into office, she spoke with Hyatt, who by then was no longer working at the CPUC.  Batjer testified that Hyatt told her Stebbins had asked Hyatt to do things she thought were wrong, and that Hyatt implied that people were being hired at the CPUC in violation of state hiring rules.  Batjer testified that, as a result of her conversation with Hyatt, she

---

you decide that a party did so, you may decide that the evidence would have been unfavorable to that party."

contacted the executive officer of the State Personnel Board (SPB), Suzanne Ambrose. The SPB is the state agency that enforces the state's civil service statutes. (Cal. Const., art. VII, §§ 1, 2, 3.[2]) Batjer told Ambrose that she was concerned people were being hired into the CPUC outside the hiring rules. That conversation led to the SPB opening an investigation, which was conducted by an SPB employee named Lori Gillihan.

The SPB directed Veneracion-Alunan and Washburn (from the CPUC) to provide the SPB with the information they had gathered during their internal investigation, which they did. As the SPB's investigation continued, Veneracion-Alunan and Washburn continued to provide information as requested, and they reviewed and commented on drafts of the SPB's report, at the request of the SPB.

C.    *SPB Report*

The SPB prepared a draft investigation report dated June 12, 2020,[3] which included findings about Stebbins's involvement in the hiring of five CPUC employees. The draft report stated that Stebbins pre-selected a candidate for a high-level CPUC position even though he was less qualified than several other candidates, and then increased his salary 49 percent just four months after he was hired. The report also stated that Stebbins hired four other people into positions for which they were not the most qualified candidates, and that those four employees were not doing work that rose to the level at which they were hired. The draft report was sent to the CPUC for response.

---

[2] The SPB consists of five members who are appointed by the Governor and who themselves appoint an executive officer to administer the civil service statutes. (Cal. Const., art. VII, § 2, subds. (a), (c); § 3, subd. (b).)

[3] Subsequent dates are in 2020 unless otherwise stated.

3

The CPUC commissioners directed the CPUC's human resources department to assess the report's findings and draft the CPUC's written response, and also asked Stebbins to review the draft report and provide a written response.

On July 24, after Stebbins had submitted her response to the draft report, CPUC Commissioner Liane Randolph asked Stebbins to resign, saying that the commissioners had lost faith in her because of the SPB report. Stebbins did not agree to resign. On July 30, CPUC President Batjer asked Stebbins to resign, and again Stebbins refused. On August 4, Stebbins was placed on administrative leave.

On August 10, CPUC President Batjer sent an email to CPUC employees, stating that on that day the SPB had issued a special investigation report about the CPUC's hiring practices, and including a link to the final report, which included the CPUC's response. The report stated that the SPB had reviewed information "to determine whether the actions of CPUC officials and employees violated the California Constitution's requirement that appointment and promotion shall be made under a general system based on merit ascertained by competitive examination," and that "the scope of SPB review includes appointments of certain employees made between June 2018 and March 2019 to determine whether Civil Service rules were violated, and, if so, by whom." Batjer's August 10 email stated that the commissioners shared the "SPB's commitment to protecting the merit system as required by the California Constitution to ensure appointments and promotions are made under a system based on merit through competitive examination."

On September 2, Stebbins received a letter informing her that her employment at the CPUC would end on September 4.

D.      *Stebbins Files Suit*

In December Stebbins filed a 17-page complaint against the CPUC in San Francisco Superior Court alleging four causes of action. She alleged that in her role as executive director of the CPUC she directed her staff to prepare various audits and reports that focused on fiscal accountability at the CPUC and the CPUC's oversight of utilities. She further alleged that the work underlying those audits and reports revealed serious problems with the CPUC's accounting processes, as well as financial mismanagement and operational deficiencies. Stebbins alleged that starting in December 2019, she made efforts to engage CPUC President Batjer and other CPUC commissioners on these issues, but was met with indifference.

Stebbins alleged that the SPB report was a pretext for her termination, and was intended to cover up the fact that she was terminated because of her efforts to address serious problems at the CPUC, including its failure to pursue the recovery of about $200 million from regulated utilities. She alleged that she was terminated in retaliation for refusing to close down investigations and for insisting on completing reports of the CPUC's problems and failures.

E.      *Trial and Verdict*

By the time of trial, Stebbins was proceeding on only two causes of action against the CPUC: one for whistleblower retaliation in violation of Labor Code section 1102.5, and one for whistleblower retaliation in violation of the California Whistleblower Protection Act (Gov. Code, § 8547 et seq.). The trial proceedings ran for 26 days.

After just one day of deliberation, the jury returned its verdict in favor of the CPUC. The jury specifically found that there was no retaliation:

Stebbins's disclosure of information to the CPUC was not a contributing factor in the CPUC's decision to fire her.[4]

Judgment was entered in favor of the CPUC, and this appeal followed.

## DISCUSSION

A. *Principles of Appellate Review*

A judgment challenged on appeal is presumed to be correct, and it is the appellant's burden to affirmatively show that the trial court erred (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*)) and to provide legal argument showing how the error was prejudicial. (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963 (*Century Surety*).)

An appellant's opening brief must include "a summary of the significant facts limited to matters in the record" (Cal. Rules of Court, rule 8.204(a)(2)(C)) and must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (*Id.*, rule 8.204(a)(1)(C).)

An appellant must "present each point separately in the opening brief under an appropriate heading, showing the nature of the question to be presented and the point to be made; otherwise the point will be forfeited." (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 656, citing Cal. Rules of Court, rule 8.204(a)(1)(B).) In addition, an appellant must "support claims of error with meaningful argument and citation to authority. [Citations.] When legal

---

[4] The jury was given a special verdict form with a series of questions for each of the two causes of action. Although for each cause of action the jury found that Stebbins had made legally protected disclosures to the CPUC about information that she believed was "a violation of or non-compliance with a federal or state statute, rule, or regulation" or "a violation of law or government waste," no disclosure was a "contributing factor in [the CPUC's] decision to discharge her." Thus the jury never reached the question of damages. Neither Stebbins nor the CPUC asked to poll the jury.

6

argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration." *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.)  We are "not required to examine undeveloped claims or to supply arguments for the litigants."  (*Ibid.*)

Further, an appellant's arguments must be supported by appropriate reference to the appellate record. (*Air Couriers International v. Employment Development Dept.* (2007) 150 Cal.App.4th 923, 928 (*Air Couriers*).)  We are not required to search the record for evidence, and we may disregard unsupported factual assertions.  (*Ibid.*; see Cal. Rules of Court, rule 8.204(a)(1)(C) & (a)(2)(C) [appellant's opening brief must include a summary of significant facts limited to matters in the record, with any reference to a matter in the record supported by a citation to the volume and page number of the record].)

Stebbins was represented by counsel in the trial court but represented herself on appeal until after her opening brief was filed.  The rules that govern appellate review and practice apply to self-represented litigants as well as to those represented by counsel.  (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247 [self-represented party " 'is entitled to the same, but no greater consideration than other litigants and attorneys' "].)  Stebbins's opening brief is deficient in several respects.  The brief does not contain a coherent statement of facts:  the facts are not presented chronologically or thematically.  Many of the assertions in the statement are not supported by any citation to the record, while some apparently simple factual statements are followed by string cites containing up to 35 separate citations to the trial transcript, with no indication of whether the citations are to argument or testimony, or whose testimony is being cited, or how those citations support Stebbins's claims of error.  This is not "appropriate

7

reference to the appellate record" (*Air Couriers*, *supra*, 150 Cal.App.4th at p. 928), particularly in a case like this one where the reporter's transcript of the multi-week trial is nearly 5,000 pages long.  Moreover, none of the assertions in the argument section of the brief are supported by citations to the record or by citations to legal authority.

Nevertheless, we discern two issues on appeal:  first, that the court erred in instructing the jury that the SPB and CPUC were separate entities because, as argued by Stebbins on appeal, the agencies did not conduct themselves as independent agencies in their investigations, and second, that the court erred in refusing to give CACI No. 204, because, as argued by Stebbins on appeal, there was evidence that both the SPB investigator and CPUC employees destroyed or suppressed evidence.  We address those issues to the extent we can in light of the limitations of Stebbins's briefing.

B.     *Applicable Law and Standard of Review*

A party has the "right to have the jury instructed as to the law applicable to all their theories of the case which were supported by the pleadings and the evidence, whether or not that evidence was considered persuasive by the trial court." (*Fish v. Los Angeles Dodgers Baseball Club* (1976) 56 Cal.App.3d 620, 633.)

We apply the de novo standard of review to claims that a court erred in giving or refusing a jury instruction.  (*Ted Jacob Engineering Group, Inc. v. The Ratcliff Architects* (2010) 187 Cal.App.4th 945, 961 (*Ted Jacob Engineering*).)  Instructional error in a civil case is prejudicial "if it is reasonably probable the error affected the verdict."  (*Id.* at p. 962.)  Although our review is de novo, the fundamental principles of appellate review apply: it is appellant's burden to demonstrate both error (*Denham*, *supra*, 2 Cal.3d at p. 564) and prejudice (*Century Surety*, *supra*, 139 Cal.App.4th at p. 963),

8

and our review is limited to the issues that are adequately raised and supported in appellant's opening brief. (See *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 ["[i]ssues not raised in an appellant's brief are deemed waived or abandoned"].) We do not consider issues raised for the first time in a reply brief. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)

C.    *Additional Background on Jury Instructions*

At trial, Lori Gillihan, who conducted the SPB's investigation, testified in response to questions from Stebbins's attorney that she did not save all the drafts of her investigation report, and that she sometimes wrote a new draft over an old one. Gillihan also testified that although she recorded interviews with certain witnesses, she retained only some of the recordings. She did not retain interviews that she considered "meaningless." During a break in Gillihan's testimony, and outside the presence of the jury, the trial court judge stated that he was considering giving CACI No. 204, pending hearing from the CPUC about why the SPB's decisions about retaining documents should not be used against the CPUC. Upon subsequent questioning by counsel for the CPUC, Gillihan testified that she alone made the decisions about what materials to retain; that neither her supervisor at the SPB nor anyone at the CPUC asked her to delete any recordings or documents, and that she did not tell her supervisor or anyone at the CPUC that she was going to delete material or that she had done so.

After Gillihan's testimony was concluded, the court stated in a conference with counsel that it had raised the question of the "relationship between the State Personnel Board and the CPUC and the connection with

9

CACI No. 204, and I'm looking forward to getting briefing on that issue."[5] The court also stated that, because Stebbins had asked for CACI No. 204, and the CPUC opposed that request, there would be "a full hearing on that."

As the trial drew to a close, the court conducted several conferences with counsel to discuss jury instructions. At one such conference, the court acknowledged the parties' disagreement as to whether CACI No. 204 should be given. The court stated that "there will be a further hearing as to whether or not there is evidence to support—that the CPUC or an employee of the CPUC in some respects [a]ffected evidence such that it should be given with regard to the CPUC, and *no one is requesting that it be given with regard to any actions of the State Personnel Board*, and so that will be an issue we'll resolve later today. [¶] So there I'd be looking to the Plaintiff to identify the witness and/or the employee of the CPUC who you believed destroyed evidence or took other actions which would justify giving [CACI No.] 204 to the CPUC." (Italics added.) Stebbins's counsel confirmed that she would be prepared to address the issue of CACI No. 204. She did *not* dispute that no one requested that CACI No. 204 be given with regard to actions of the SPB. At the conclusion of that conference, in keeping with its practice throughout the proceedings, the court asked both parties whether they wanted to put anything on the record before the jury was admitted to hear further testimony. Both sides said no.

At another jury instruction conference outside the presence of the jury later that day, there was discussion of the CPUC's request for a special

_____

[5] Stebbins did not include any briefing on that matter, or any other, in the record on appeal. (See *Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362 [appellant has the burden to provide an adequate record for review; we indulge " ' " '[a]ll intendments and presumptions . . . to support [trial court orders] on matters as to which the record is silent' " ' "].)

10

instruction that the "[CPUC] is a separate and distinct legal entity from the [SPB]." Stebbins's counsel's only response to that instruction was that she would not object to it being given as long as the court also gave CACI No. 204. Counsel for the CPUC argued that the instruction should not be contingent on CACI No. 204 "based on everything that the jury has heard to date about some of the decisions made by Lori Gillihan. [¶] So we think it's important that the jury understand that we are a separate and distinct legal entity from the State Personnel Board."

At conferences held the next day, the court heard extensive argument on whether to give CACI No. 204. Stebbins's counsel made two arguments for giving the instruction. The first, which Stebbins's counsel characterized as "overt destruction of evidence," was that Veneracion-Alunan and Washburn, who conducted the CPUC's internal investigation, had both testified that they took handwritten notes of interviews they conducted, typed those notes into memoranda, and then destroyed the handwritten notes.[6] Stebbins's counsel argued that the "best evidence" of what occurred in the interviews would have been the handwritten notes. The second argument, which Stebbins's counsel characterized as "circumstantial evidence of destruction," was that Veneracion-Alunan and Washburn had testified in deposition that there were "no writings" about findings they made concerning certain questionable employee travel expenses, but had testified at trial that there was a draft memorandum. Yet no such draft was ever produced in

---

[6] Veneracion-Alunan and Washburn testified at trial that the handwritten notes were typed into interview summaries, which were reviewed to make sure they included everything in the handwritten notes, and that the handwritten notes were then discarded.

11

discovery. Stebbins's counsel argued that the "document appears not to exist, [which] is circumstantial evidence that it was destroyed."

After hearing further argument from counsel, the trial court concluded that in view of Washburn's testimony that the handwritten interview notes were "transcribed" into typed summaries, the failure to retain the notes did not justify giving CACI No. 204. With respect to the document about travel expenses, the trial court stated that it understood Stebbins to be arguing that a document related to the investigation into travel expenses should have been produced in discovery but was not. The parties disagreed as to whether a discovery request had ever been made that would have called for such a document. The court stated that it would have CACI No. 204 in hand to read to the jury the next day, but would not give it unless Stebbins's counsel provided evidence that a request for production had been made that was "broad enough to have included that memorandum if it existed." The court explained, "If it was never requested, then it wasn't concealed [and] there's no basis for giving [CACI No.] 204." Stebbins's counsel said she would find the discovery request.

Later during the same jury instruction conference, the court stated that whether or not it gave CACI No. 204, it would give the requested special instruction that the SPB and CPUC were separate entities, explaining, "I think it's very important in this case that the difference between the two entities, the separation and distinct legal identity of each, be emphasized by the Court with an instruction. [¶] I think it's certainly warranted under the circumstances of this case, and it will be given."

The record contains no further discussion of the special instruction or CACI No. 204. The next day the court instructed the jury, including the special instruction, and the parties gave their closing arguments. Counsel

never mentioned CACI No. 204 again; Stebbins's attorneys never provided evidence that the document about travel expenses had been requested in discovery, as they had promised they would the night before; and the court did not give CACI No. 204.

D. *Stebbins's Arguments on Appeal*

Stebbins's arguments are not clearly presented. Notably, however, Stebbins does not present any legal argument in her opening brief that CACI No. 204 should have been given to the jury on account of the destruction of Veneracion-Alunan's and Washburn's handwritten interview notes or on account of the failure to produce a memorandum about the investigation of travel expenses, which were the issues raised by her counsel in arguing for the instruction at trial. She does not even mention those issues.

We understand Stebbins's primary argument on appeal to be as follows: Lori Gillihan, the SPB investigator, destroyed the recording of an interview she conducted with CPUC employee Ellen Moratti, as well as notes Gillihan took during that interview; because the CPUC and SPB were working together on the SPB investigation, the destruction of that material was effectively destruction by the CPUC; and if the jury had been given CACI No. 204, it would have understood that the Moratti interview notes tied the fiscal issues that Stebbins was investigating with the SPB investigation, therefore the jury would have "been able to say yes" as to whether Stebbins's reporting on alleged fiscal malfeasance at the CPUC was a contributing factor in the CPUC's decision to discharge her.

The problem with this argument is that it was never made to the trial court in connection with the instruction of the jury, and therefore it has been forfeited. As a general matter, we will not consider issues that are raised for the first time on appeal when those issues could have been but were not

13

presented to the trial court. (*Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11 (*Newton*).) Further, the argument fails because Stebbins does not provide any citations to evidence that would suggest Moratti spoke with Gillihan about fiscal malfeasance at the CPUC. It is noteworthy that, although there was testimony at trial about Moratti, including testimony from Gillihan about her interview with Moratti, Moratti did not testify at trial, nor was she mentioned by either party in closing argument.

Stebbins also argues that the trial court should have given CACI No. 204 because there was evidence that investigators at the CPUC and SPB used their personal email accounts, instead of the state email system, in communicating about the investigations, and that they did so, allegedly, in order to avoid producing evidence. This argument has been forfeited for two reasons. First, it is not supported by any citations to the record, and we disregard unsupported factual assertions. (*Air Couriers*, *supra*, 150 Cal.App.4th at p. 928.) Second, Stebbins's counsel never argued in the trial court that the use of personal email accounts was a reason to give CACI No. 204. (*Newton*, *supra*, 110 Cal.App.4th at p. 11.) Because Stebbins has forfeited her claim that the trial court erred by not giving CACI No. 204, we do not discuss that issue further.

With respect to the trial court's decision to instruct the jury that the SPB and CPUC are separate entities, Stebbins concedes—as she must—that the SPB and CPUC are legally distinct. She argues only that they acted together improperly in investigating her. Even if the special instruction was given in error (and Stebbins has not demonstrated that it was), Stebbins fails to show how she was prejudiced by it, because she does not show how it is reasonably probable that the jury would have reached a different verdict if it had not been given the instruction. (*Ted Jacob Engineering*, *supra*, 187

14

Cal.App.4th at p. 962.) Nothing about that jury instruction precluded Stebbins's counsel from arguing in their closing arguments that the CPUC had been improperly involved in the SPB's investigation, which counsel argued at length. Stebbins's counsel also argued in closing that Gillihan had destroyed documents to prevent Stebbins from "ever being able to shine the light on what a rotten, biased house of lies this investigation really was," that the investigation was a pretext for firing Stebbins, and that the SPB investigation "was a secret retaliation to basically give a report to the [c]ommissioners." Yet notwithstanding all the evidence adduced over weeks of trial, the jury found that Stebbins's disclosure of information about assertedly improper fiscal activities at the CPUC was not a contributing factor in the CPUC's decision to discharge her. Stebbins fails to show on appeal how it is reasonably probable that the jury would have reached a different verdict if it had not been instructed that the SPB and CPUC were separate legal entities.

## DISPOSITION

The judgment is affirmed. Respondent shall recover any costs on appeal.

 

 

 

_____
                                 Miller, J.

WE CONCUR:

_____
Richman, Acting P. J.

_____
Mayfield, J.[*]

A167141, *Stebbins v. California Public Utilities Commission*

---

[*] Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.